UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
Civil No. 1:18-cv-108 (WCG)

Menominee Indian Tribe of Wisconsin,

          Plaintiff,

    v.

United States Environmental Protection
Agency, et al.,

          Defendants.

DEFENDANTS' MEMORANDUM
IN SUPPORT OF MOTION TO
DISMISS

# TABLE OF CONTENTS

Table of Contents...........................................................................................................i

Table of Authorities.....................................................................................................ii

Introduction..................................................................................................................1

          A.     Statutory and Regulatory Background.................................3

          B.     Factual Background ............................................................5

          C.     Procedural Background......................................................6

Standard of Review......................................................................................................6

Argument......................................................................................................................7

       I.     Count 1 Should Be Dismissed To The Extent It Asserts That The Corps Violated A Mandatory Duty.............................................................7

       II.    Count 1 Should Be Dismissed To The Extent It Asserts That EPA Violated A Mandatory Duty...............................................................10

       III.   Count 2 Fails To State A Claim For Judicial Review Of A Final Agency Action....................................................................................11

       IV.   The Tribe's Claims Are Not Ripe. ..............................................13

Conclusion..................................................................................................................17

Case 1:18-cv-00108-WCG   Filed 03/30/18   Page 2 of 24   Document 7

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967), *overruled on other grounds*,
*Califano v. Sanders*,
   430 U.S. 99 (1977) ................................................................................................14

*Airline Prof'ls Ass'n of the Int'l Bhd. Of Teamsters, Local Union No. 1224 v. Airborne, Inc.*,
   332 F.3d 983 (6th Cir. 2003) ................................................................................15

*Alliance To Save Mattaponi v. U.S. Army Corps of Engineers*,
   515 F. Supp. 2d 1 (D.D.C. 2007)........................................................................7, 8

*Ass'n of Flight Attendants-CWA, AFL-CIO v. Chao*,
   493 F.3d 155 (D.C. Cir. 2007)................................................................................15

*Bennett v. Spear*,
   520 U.S. 154 (1997)..........................................................................................3, 12

*CareToLive v. Eschenbach*,
   525 F. Supp. 2d 938 (S.D. Ohio 2007) ................................................................15

*Christopher Lake Dev. Co. v. St. Louis Cnty.*,
   35 F.3d 1269 (8th Cir. 1994) ................................................................................14

*Dealer Computer Servs. v. Dub Herring Ford*,
   547 F.3d 558 (6th Cir. 2008) ................................................................................14

*Golden and Zimmerman, L.L.C. v. Domenech*,
   599 F. Supp. 2d 702 (E.D. Va. 2009)....................................................................12

*Harris v. FAA*,
   215 F. Supp. 2d 209 (D.D.C. 2002) ......................................................................12

*Home Builders Ass'n of Greater Chicago v. U.S. Army Corps of Engineers*,
   335 F.3d 607 (7th Cir. 2003) ................................................................................13

---

\* Authorities chiefly relied upon are marked with an asterisk.

*Huron Mountain Club v. U.S. Army Corps of Engineers,
545 F. App'x 390 (6th Cir. 2013) ............................................................ 1, 8, 9

Huron Mountain Club v. U.S. Army Corps of Engineers,
No. 2:12-CV-197, 2012 WL 3060146 (W.D. Mich. July 25, 2012) ............................... 9

Indep. Equip. Dealers Ass'n v. EPA,
372 F.3d 420 (D.C. Cir. 2004) ...................................................................12

Kokkonen v. Guardian Life Ins. Co.,
511 U.S. 375 (1994) .............................................................................7

Marquette County Road Comm'n v. EPA,
No. 17-1154, 2018 WL 1388541 (6th Cir. Mar. 20, 2018) ...........................................13

McCulley v. U.S. Dep't of Veterans Affairs,
851 F. Supp. 1271 (E.D. Wis. 1994) ...............................................................7

Ohio Forestry Ass'n v. Sierra Club,
523 U.S. 726 (1998) ............................................................................14

Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers,
87 F.3d 1242 (11th Cir. 1996) ....................................................................8

Sam & Ali, Inc. v. Ohio Dep't of Liquor Control,
158 F.3d 397 (6th Cir. 1998) ....................................................................14

*Scott v. City of Hammond,
741 F.2d 992 (7th Cir. 1984) .................................................................2, 10

Sharkey v. Quarantillo,
541 F.3d 75 (2d Cir. 2008) ......................................................................15

Steel Co. v. Citizens for a Better Env't,
523 U.S. 83 (1998) .............................................................................7

U.S. Dep't of Energy v. Ohio,
503 U.S. 607 (1992) .............................................................................7

_____

* Authorities chiefly relied upon are marked with an asterisk.

iii

*Wisconsin's Environmental Decade, Inc. v. Wisconsin Power & Light Co.,*
   395 F. Supp. 313 (W.D. Wis. 1975) ..................................................................10

**Statutes**

5 U.S.C. § 704..............................................................................................................11

33 U.S.C. § 1251(d) ........................................................................................................8

33 U.S.C. § 1311(a) ........................................................................................................3

33 U.S.C. § 1342........................................................................................................3, 4

33 U.S.C. § 1342(d)(4) ...................................................................................................4

33 U.S.C. § 1344 .................................................................1, 2, 4, 5, 6, 9, 10, 11, 12, 13

33 U.S.C. § 1344(a) .....................................................................................................3, 9

33 U.S.C. § 1344(c) ......................................................................................................10

33 U.S.C. § 1344(e) ......................................................................................................10

33 U.S.C. § 1344(g).............................................................................................3, 5, 6, 10

33 U.S.C. § 1344(g)(1)....................................................................................................3

33 U.S.C. § 1344(h)(1) ...................................................................................................3

33 U.S.C. § 1344(h)(2)(A)..............................................................................................4

33 U.S.C. § 1344(h)(3)....................................................................................................4

33 U.S.C. § 1344(j).....................................................................................................4, 13

33 U.S.C. § 1362(12) ......................................................................................................3

33 U.S.C. § 1365(a) ........................................................................................................7

---

\* Authorities chiefly relied upon are marked with an asterisk.

iv

33 U.S.C. § 1365(a)(1)...........................................................................................8

33 U.S.C. § 1365(a)(2)...........................................................................1, 7, 8, 10, 11

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(1)........................................................................................1, 6, 13

Fed. R. Civ. P. 12(b)(6).......................................................................................1, 7

**Code of Federal Regulations**

33 C.F.R. pt. 320..................................................................................................3

33 C.F.R. pt. 325..................................................................................................3

40 C.F.R. § 233.50(f)............................................................................................4

40 C.F.R. § 233.50(g)...........................................................................................4

40 C.F.R. § 233.50(i)............................................................................................4

40 C.F.R. § 233.70................................................................................................4

**Federal Register**

49 Fed. Reg. 38,947 (Oct. 2, 1984)........................................................................4

---

\* Authorities chiefly relied upon are marked with an asterisk.

v

# INTRODUCTION

Defendants the U.S. Environmental Protection Agency ("EPA") and the U.S. Army Corps of Engineers (the "Corps") move pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss both counts of the Complaint. In this case, the construction of a proposed mine on the Michigan side of the Menominee River will involve the discharge of dredged or fill material into waters of the United States, and thus requires a permit under Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344 (a "Section 404 permit"). Plaintiff, the Menominee Indian Tribe of Wisconsin ("the Tribe"), argues that the Corps, not the Michigan Department of Environmental Quality ("Michigan DEQ"), should be the agency which determines whether or not to issue that permit.

Count 1 is brought under the CWA's citizen suit provision, 33 U.S.C. § 1365(a)(2), and argues that EPA and the Corps each have a mandatory duty to exercise Section 404 permitting authority. The statutory provision, however, only waives the United States' sovereign immunity to suit for mandatory duties imposed upon the EPA Administrator, not the Corps, so to the extent Count 1 seeks relief against the Corps, the Court lacks subject matter jurisdiction. And, even if the statute could be read to include the Corps within its terms, the Court should follow the Sixth Circuit's decision on very similar facts in *Huron Mountain Club v. U.S. Army Corps of Engineers*, 545 F. App'x 390 (6th Cir. 2013), which held that there is no duty to

exercise Section 404 permitting authority. Without a mandatory duty, Count 1 fails to state a claim against the Corps.

As to Count 1's claims against EPA, EPA does not issue permits or otherwise exercise permitting authority at all (other than its right to object to a proposed permit). Thus, the arguments in Count 1 that EPA must somehow exercise Section 404 permitting authority, which EPA does not have, fail to state a claim. Count 1 also argues that Section 404 permitting authority for discharges into the portion of the Menominee River and its adjacent wetlands near the proposed mine should not have been assumed by the State of Michigan. This is actually a challenge to the substance of EPA's 1984 decision to approve Michigan's assumption of the Section 404 permitting program, not a claim that EPA violated any mandatory duties in making that decision, and under *Scott v. City of Hammond*, 741 F.2d 992 (7th Cir. 1984), is not properly the subject of a CWA citizen suit. For this reason as well, Count 1 fails to state a claim upon which relief may be granted against EPA.

Count 2 argues that statements in letters to a U.S. Senator and to the Tribe itself are final agency actions with respect to whether the federal agencies will exercise permitting authority over the proposed mine project, and thus are reviewable under the Administrative Procedure Act ("APA"). This, too, fails to state a claim because the letters neither mark the completion of the decision-making process nor have concrete legal consequences that will directly affect the Tribe. The letters merely restate a decision made decades ago and thus do not meet the Supreme Court's well-

established test for finality under the APA.  *See, e.g., Bennett v. Spear*, 520 U.S. 154, 178 (1997).

## A.      Statutory and Regulatory Background

The CWA prohibits the discharge of any pollutant into waters of the United States except when authorized by a permit or an exception.  33 U.S.C. §§ 1311(a), 1362(12).  Section 404(a) of the CWA authorizes the Secretary of the Army, acting through the Corps, to issue individual permits for the discharge of certain pollutants, specifically "dredged or fill material."  33 U.S.C. § 1344(a); *see generally* 33 C.F.R. pts. 320, 325 (detailing permitting procedures).[1]  However, under CWA section 404(g), a state

> desiring to administer its own individual and general permit program for the discharge of dredged or fill material into the navigable waters (other than those waters which are presently used, or are susceptible to use in their natural condition or by reasonable improvement as a means to transport interstate or foreign commerce shoreward to their . . . mean high water mark, or mean higher high water mark on the west coast, including wetlands adjacent thereto) within its jurisdiction may submit to EPA a description of its program and a statement that state law provides adequate authority to carry out the program.

33 U.S.C. § 1344(g)(1).  The statute contains defined timelines for EPA to share this information with sister federal agencies, for them to comment, and for EPA to determine whether the state's program meets certain criteria.  *Id.* § 1344(h)(1).  If EPA

---

[1] Under a separate permitting process not at issue here, discharges of other pollutants are governed by the National Pollutant Discharge Elimination System ("NPDES") permit program, established in CWA section 402, 33 U.S.C. § 1342, which states can also administer.

fails to make a determination within 120 days, the state's program is deemed to be approved. *Id.* § 1344(h)(3).

Once a state program is approved by EPA, the authority of the Corps to issue Section 404 permits is suspended, except for those waters exempted from the assumption. 33 U.S.C. § 1344(h)(2)(A). However, a state administering a Section 404 permit program must provide EPA with a copy of all permit applications and proposed permits. *Id.* § 1344(j). If EPA objects to a proposed permit, the state may either issue a revised permit that resolves EPA's objections; deny the permit application; or request a public hearing. 33 U.S.C. § 1344(j); 40 C.F.R. §§ 233.50(f), (g). If the state takes none of these actions within 90 days, permitting authority transfers to the Corps. 33 U.S.C. § 1344(j); 40 C.F.R. § 233.50(i). The Corps then conducts its own analysis of the proposed project, independent of the state review process and of EPA's objections at the state level. *Id.*[2]

Michigan is one of only two states (alongside New Jersey) with a federally approved state dredge and fill permitting program. *See* 40 C.F.R. § 233.70 (codifying the Michigan assumption). EPA approved Michigan's program in 1984. *See* 49 Fed. Reg. 38,947 (Oct. 2, 1984).

---

[2] State NPDES permitting programs under section 402 are subject to a parallel oversight process. A state may not issue a permit over EPA's objection, and if a state fails to submit a revised permit that resolves EPA's objections, permitting authority reverts to EPA. *See* 33 U.S.C. § 1342(d)(4).

4

## B. Factual Background

Solely for purposes of this motion, the United States takes the following cited facts from Plaintiff's Complaint as true. The Back Forty Mine (the "Mine") is a proposed sulfide mine on the banks of the Menominee River in Menominee County, Michigan. Compl. ¶ 36. According to the Complaint, the proposed Mine will "dredge and/or fill wetlands adjacent to the Menominee River." *Id.* ¶ 3. The Complaint asserts that the Menominee River is used in interstate commerce, *id.* ¶ 35, and "could not have [been] delegated [to Michigan] under applicable law." *Id.* ¶ 34.

The Mine's proponent, Aquila Resources, Inc. ("Aquila"), applied to Michigan DEQ for a Section 404 permit. *Id.* ¶ 39. Michigan DEQ supplied EPA with a copy of the permit application in May 2016, EPA objected, and Aquila withdrew the application and reapplied in January 2017. *Id.* ¶¶ 42, 43. Michigan DEQ has published the permit application for public review and comment. *Id.* ¶ 50.

On August 18, 2017, Sen. Baldwin wrote to the Corps and according to the Complaint "requested that the federal agencies take jurisdiction of the Section 404 permitting for the Mine." *Id.* ¶ 45. On August 21, 2017, the Tribe wrote to EPA and to the Corps, asserting that the Corps is the proper Section 404 permitting authority for the Mine, because "the Menominee River and adjacent wetlands were not and could not be delegated to the State of Michigan in 1984 under 33 U.S.C. § 1344(g)." *Id.* ¶ 44.

The Corps responded to Sen. Baldwin and to the Tribe in August and in September 2017, respectively. *Id.* ¶¶ 46, 47. According to the Complaint, in these letters the Corps "declin[ed] to exercise jurisdiction over the Section 404 permit" application and noted that EPA would "review and comment and potentially object to the proposed permit at a later date." *Id.* ¶¶ 46, 47. EPA responded to the Tribe in October 2017 and offered to consult with the Tribe regarding the Section 404 permit process. *Id.* ¶ 48.

On March 8, 2018, EPA issued a letter objecting to Aquila's revised proposal. *See* Declaration of Daniel R. Dertke, attached as Ex. 1.

### C.    Procedural Background

By letter dated November 6, 2017, the Tribe provided a Notice of Intent to Sue EPA and the Corps for failure to "comply with their mandatory duty to exercise jurisdiction over the Section 404 permit" for the Mine, "based on the fact that the Menominee River and its adjacent wetlands were not part of, and could not have been part of, a Section 404 delegation to the State of Michigan under 33 U.S.C. § 1344(g)." Compl. ¶ 49. The Tribe then filed this Complaint on January 22, 2018, and served the U.S. Attorney's Office on January 29.

### STANDARD OF REVIEW

When construing a motion under Fed. R. Civ. P. 12(b)(1), courts are not bound to accept as true the allegations of the complaint, and "the party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent

proof." *McCulley v. U.S. Dep't of Veterans Affairs*, 851 F. Supp. 1271, 1276 (E.D. Wis. 1994) (citations and quotation marks omitted). In contrast, when considering a motion to dismiss under Rule 12(b)(6), the district court "must accept as true all well-pleaded factual allegations contained in the plaintiff's complaint, viewing all reasonable inferences in the light most favorable to the plaintiff." *Id.* (citations omitted). Because federal courts are courts of limited jurisdiction and may hear cases only to the extent expressly provided by statute, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998), it is "to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted).

## ARGUMENT

### I. Count 1 Should Be Dismissed To The Extent It Asserts That The Corps Violated A Mandatory Duty.

The CWA's citizen suit provision, 33 U.S.C. § 1365(a), is a limited waiver of sovereign immunity, and courts must construe such waivers narrowly and may not expand waivers beyond their express terms. *Alliance To Save Mattaponi v. U.S. Army Corps of Engineers*, 515 F. Supp. 2d 1, 5 (D.D.C. 2007); *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992). The Tribe cannot meet its burden to show that this waiver applies to its claim against the Corps.

7

The statute's plain language authorizes citizen suits against "the Administrator" for the violation of a mandatory duty. 33 U.S.C. § 1365(a)(2). The Administrator is defined as the Administrator of EPA, not as the Corps or its officials. *Id.* § 1251(d) ("Except as otherwise expressly provided in this chapter, the Administrator of the Environmental Protection Agency (hereinafter in this chapter called 'Administrator') shall administer this chapter."). *Compare id.* § 1365(a)(1) (allowing a citizen to bring suit against "any person (including (i) the United States, and (ii) any other governmental instrumentality or agency . . .)" for the violation of an effluent standard or limitation).

Count 1 must therefore be dismissed as to the Corps, for lack of jurisdiction. *Alliance to Save Mattaponi*, 515 F. Supp. 2d at 7; *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1249 (11th Cir. 1996).

Even if the Court were to find that the Corps falls within the terms of section 1365(a)(2) and has jurisdiction over a claim that the Corps violated a mandatory duty, Count 1 should be dismissed for failure to state a claim. Count 1 is premised on the theory that the Corps has a mandatory duty to exercise CWA permitting authority. This theory has been explicitly rejected by the Sixth Circuit in a case with analogous facts.

In *Huron Mountain Club*, a mining company obtained a state permit to develop a mine, part of which would be beneath the Salmon Trout River and its adjacent wetlands. 545 F. App'x at 391. Plaintiffs appealed the permit in state court, and while

8

that appeal was pending sought a federal court injunction arguing that the Corps is required to administer the CWA permit program with respect to the proposed mine. *Id.* at 392. Although the plaintiff did not bring a citizen suit claim against the Corps, the Court's analysis under the APA and the Mandamus Act involved essentially the same question as presented here: whether the Corps "has a non-discretionary duty under the CWA to administer the CWA permitting program." *Id.* at 394. *See also Huron Mountain Club v. U.S. Army Corps of Engineers*, No. 2:12-cv-197, 2012 WL 3060146 at *4 (W.D. Mich. July 25, 2012) (plaintiff asserts the Corps has "congressionally mandated responsibilities" to administer the CWA permitting program "when the facts prove the Corps' jurisdiction has been triggered"); *id.* at *8 (asserting that the Corps "cannot delegate its CWA § 404 permitting authority" to Michigan because the waters at issue are "beyond the scope of waters that are subject to state delegation").

The Sixth Circuit concluded that there is no mandate "to initiate the permit process" or "to force permitting requests." 545 F. App'x at 394, 396. The Court should reach the same conclusion here. Despite the Tribe's argument that Section 404 permitting authority for the Menominee River and its wetlands "could not be delegated to the State of Michigan in 1984," Compl. ¶ 62, which are identical to the Huron Mountain Club's allegations, even if true, there is no mandatory duty to "exercise federal jurisdiction and control over the Section 404 permitting" of the Mine. *Id.* ¶ 3.

## II. Count 1 Should Be Dismissed To The Extent It Asserts That EPA Violated A Mandatory Duty.

EPA has no authority to issue Section 404 permits. *Compare* 33 U.S.C. §§ 1344(a) ("The Secretary may issue permits . . . for the discharge of dredged or fill material into the navigable waters at specified disposal sites") *and* 1344(e) ("the Secretary may . . . issue general permits on a State, regional, or nationwide basis for any category of activities involving discharges of dredged or fill material") *with id.* § 1344(c) ("The Administrator is authorized to prohibit the specification . . . of any defined area as a disposal site"). Thus, the arguments in Count 1 that EPA must somehow assume the permit-writing function under Section 404 is even farther removed from stating a claim for the violation of a mandatory duty than are the Tribe's assertions that the Corps has such a duty.

In addition to a generalized duty to exercise permitting authority, the Tribe also argues that because CWA Section 404(g) allegedly precludes Michigan from assuming Section 404 permitting authority for discharges into the Menominee River and its adjacent wetlands, EPA violated a mandatory duty when it approved Michigan's permitting program in 1984. Compl. ¶ 56. This argument fails because it amounts to a challenge to the substance of EPA's 1984 approval decision. As the Seventh Circuit has explained, the content of an agency's decision can only be challenged under the APA, not in a citizen suit under 33 U.S.C. § 1365(a)(2). *Scott v. City of Hammond*, 741 F.2d 992, 995 (7th Cir. 1984) (holding that "EPA's approval of an inadequate

10

standard" cannot be challenged via a citizen's suit); *see also Wisconsin's Environmental Decade, Inc. v. Wisconsin Power & Light Co.*, 395 F. Supp. 313, 321 (W.D. Wis. 1975) (finding that the predecessor provision to 33 U.S.C. § 1365(a)(2) "was intended to provide relief only in a narrowly-defined class of situations in which the Administrator failed to perform a mandatory function; it was not designed to permit review of the performance of those functions").

Count 1 thus amounts to a challenge to the merits of EPA's determination that Michigan can assume the Section 404 permitting program. The Tribe's real complaint is with the outcome of that decision, *i.e.*, which waterbodies were excluded when Michigan assumed the permitting program. Because a citizen's suit under section 1365(a)(2) cannot address the substance or merits of an agency action, only whether or not it was performed, the Tribe's arguments about the merits of EPA's decision are not properly the subject of Count 1. Count 1 therefore fails to state a claim upon which relief may be granted against EPA or the Corps.

## III.  Count 2 Fails To State A Claim For Judicial Review Of A Final Agency Action.

Perhaps recognizing that they are well out of time to challenge the content of EPA's actual decision that Michigan can assume the Section 404 permitting program, in Count 2 the Tribe argues that letters written in 2017 are final agency actions "on the matter of exercising jurisdiction over the Section 404 permit and process" for the Mine, and thus are reviewable under the APA. Compl. ¶ 63.

11

The APA allows for judicial review of agency actions "made reviewable by statute and *final* agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (emphasis added). It is well-established that, to be final for purposes of APA judicial review, the agency action at issue must mark the completion of the agency's decision-making process and the result must have concrete legal consequences that will directly affect the parties. *Bennett*, 520 U.S. at 178. None of the three letters to which the Tribe points meet this test.

The Tribe attempts to characterize the Corps' and EPA's responses to the Tribe as "expressly refus[ing]" to "take over the section 404 permitting process" for the proposed Mine, Compl. ¶ 4, but as the Tribe concedes, the federal agencies merely noted that permitting authority "lies with the State of Michigan by virtue of prior Section 404 permitting delegation to the State." *Id.* Far from the consummation of a decision-making process that imposes concrete legal consequences, these letters did no more than remind the Tribe that the relevant agency action occurred decades ago. It is well-settled that agency action "that merely reiterates or affirms an earlier agency decision and does not affect the rights or alter the status quo of the complaining party is not considered a 'final agency action.'" *Golden and Zimmerman, L.L.C. v. Domenech*, 599 F. Supp. 2d 702, 710 (E.D. Va. 2009) (*quoting Harris v. FAA*, 215 F. Supp. 2d 209, 213 (D.D.C. 2002)). As the D.C. Circuit has observed, "[j]ust as it would be folly to allow parties to challenge a regulation anew each year upon the annual re-publication of the Code of Federal Regulations, so too it is silly to permit parties to challenge an

established regulatory interpretation each time it is repeated." *Id.* (*quoting Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427-28 (D.C. Cir. 2004) (an EPA letter was not reviewable agency action when it merely restated "for the umteenth time" the agency's longstanding interpretation of certain regulations)).

EPA's offer to consult with the Tribe regarding the Section 404 permit process, Compl. ¶ 48, is no different. EPA's letter can hardly be characterized as the end-point of an agency process or as an action that has legal consequences. *See, e.g., Home Builders Ass'n of Greater Chicago v. U.S. Army Corps of Engineers*, 335 F.3d 607, 618-19 (7th Cir. 2003) (noting that an agency action that "establishes only the procedural framework under which the [agency] intends to operate" is not final agency action).

Because none of the agency's letter responses are final agency actions reviewable under the APA, Count 2 fails to state a claim upon which relief may be granted.

## IV. The Tribe's Claims Are Not Ripe.

As noted above, after the Tribe filed its Complaint, EPA on March 8 objected to Aquila's project as proposed. EPA's objection marks the beginning of EPA's oversight process under 33 U.S.C. § 1344(j), and is not in itself reviewable final agency action. *Marquette County Road Comm'n v. EPA*, No. 17-1154, 2018 WL 1388541 at *4-5 (6th Cir. Mar. 20, 2018). Unless Aquila withdraws its application, if EPA's objection is not resolved then permitting authority transfers to the Corps by operation of law, which is precisely the relief the Tribe seeks. To the extent the Tribe is challenging the

actual permit process for this project, rather than the 1984 decision to approve Michigan's Section 404 permitting program, EPA's objection letter renders the Tribe's claims unripe, depriving the Court of subject matter jurisdiction.[3]

A claim is not ripe unless the plaintiff can demonstrate a concrete case or controversy as required by Article III of the Constitution and "prudential considerations . . . justify the present exercise of judicial power." *Christopher Lake Dev. Co. v. St. Louis Cnty.*, 35 F.3d 1269, 1273 (8th Cir. 1994). Dismissing a case involving an administrative agency as unripe "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). To this aim, "[t]he ripeness doctrine . . . requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." *Sam & Ali, Inc. v. Ohio Dep't of Liquor Control*, 158 F.3d 397, 399 (6th Cir. 1998) (citation and quotation marks omitted). In the context of evaluating whether claims challenging agency action are ripe for review, the Supreme Court has indicated that courts should

---

[3] This argument is therefore presented under Fed. R. Civ. P. 12(b)(1), and the Court's consideration of the March 8 letter does not convert this into a motion for summary judgment.

Case 1:18-cv-00108-WCG    Filed 03/30/18    Page 20 of 24    Document 7

consider "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998); *see also Dealer Computer Servs. v. Dub Herring Ford*, 547 F.3d 558, 561 (6th Cir. 2008) (looking to "(1) the likelihood that the harm alleged by the party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage in the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits").

For many of the same reasons already discussed in establishing that neither EPA nor the Corps have taken final agency action, the Tribe's claims are also unripe. *See Sharkey v. Quarantillo*, 541 F.3d 75, 89 (2d Cir. 2008) ("The APA requirement of final agency action relates closely to the prudential doctrine of ripeness."); *Ass'n of Flight Attendants-CWA, AFL-CIO v. Chao*, 493 F.3d 155, 160 (D.C. Cir. 2007). There has been no final decision as to whether the Mine should be issued a permit, and additional administrative review is necessary before this question will be answered. Requiring the Tribe to wait until the conclusion of these proceedings before securing judicial review does not result in any harm to the Tribe, because the burdens of the administrative process on the Tribe are not a cognizable hardship. Moreover, further proceedings may entirely moot the need for litigation. *See, e.g., Airline Prof'ls Ass'n of the Int'l Bhd. Of Teamsters, Local Union No. 1224 v. Airborne, Inc.*, 332 F.3d 983, 987-88

(6th Cir. 2003) (noting that a claim may be unripe "because future events may greatly affect the outcome of the litigation and the cost of waiting is not particularly severe"); *CareToLive v. von Eschenbach*, 525 F. Supp. 2d 938, 947 (S.D. Ohio 2007).

The Court should therefore dismiss the Complaint as unripe.

## CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to dismiss.

Respectfully submitted,

JEFFREY H. WOOD
*Acting Assistant Attorney General*

*s/ Daniel R. Dertke*
DANIEL R. DERTKE
*Environmental Defense Section*
*Environment and Natural Res. Div.*
*U.S. Department of Justice*
*P.O. Box 7611*
*Washington, D.C.  20044*
*(202) 202-514-0994*
*daniel.dertke@usdoj.gov*

MARCH 30, 2018
90-5-1-4-21220

17

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2018, I electronically filed the foregoing brief with the Clerk of the Court by using the CM/ECF system.

The participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

s/ Daniel R. Dertke
DANIEL R. DERTKE