UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| MENOMINEE INDIAN TRIBE OF WISCONSIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> U. S. ENVIRONMENTAL PROTECTION ) <br> AGENCY, ANDREW WHEELER, Acting ) <br> Administrator, U. S. Environmental Protection ) <br> Agency,[1] U. S. ARMY CORPS OF ENGINEERS, ) <br> MARK T. ESPER, Secretary, U.S. Army, ) <br> ) <br> Defendants, ) <br> ) <br> AQUILA RESOURCES, INC., ) <br> ) <br> Intervenor-Defendant. ) <br> _____ ) | No. 1:18-cv-00108 -WCG <br><br> PLAINTIFF'S SUPPLEMENTAL <br> BRIEF IN RESPONSE TO MOTIONS <br> TO DISMISS |

INTRODUCTION

This Supplemental Brief in Response to Motions to Dismiss is submitted at the request of the Court at the hearing on August 1, 2018. At the hearing, counsel for Defendants U.S. Environmental Protection Agency ("EPA") and U.S. Army Corps of Engineers (the "Corps") asserted that "Section 10" waters under the Rivers and Harbors Act, 33 U.S.C. § 403, were different than "retained waters" under the Clean Water Act, 33 U.S.C. § 1344(g).[2] The Court requested authority and supplemental briefing on that point. The supplemental briefs submitted

---

[1] Substituted for former Administrator Scott Pruitt pursuant to Fed. R. Civ. P. 25(d).

[2] "Retained waters" is not defined or used in the Clean Water Act. To the extent that this term implies discretion on the part of the EPA or the Corps, it is incorrect under both the Rivers and Harbors Act and the Clean Water Act. Clean Water Act section 404 permitting in waters that are "presently used, or are susceptible to use in their natural condition or by reasonable improvement as a means to transport interstate commerce…" cannot be delegated to a state. 33 U.S.C. § 1344(g). There is no room for discretion on the question of delegated permitting.

1

by Defendants and by Defendant-Intervenor Aquila Resources, Inc. ("Intervenor") addressed the question concerning the difference outlined above, but also several additional matters, including some that were not raised in their original Motions to Dismiss.

The Menominee Indian Tribe of Wisconsin (the "Menominee Tribe" or "the Tribe") will address each of the points raised in the supplemental briefing, starting with the question on which the Court requested briefing. On that point, the difference between Section 10 waters and the Clean Water Act description of waters in which permits may not be delegated is irrelevant to the questions before the Court on the Motions to Dismiss. To the extent it is relevant (and the Menominee Tribe submits it is not), its relevance is to the merits of the underlying case. As to the additional arguments, some new, raised in the Defendants' and Intervenor's supplemental briefs, none dictate dismissal of the case.

ARGUMENT

I. THE PURPORTED DISTINCTION BETWEEN "SECTION 10" WATERS AND WATERS THAT MAY NOT BE DELEGATED UNDER THE CLEAN WATER ACTION, SECTION 404(g) IS IRRELEVANT.

   A. <u>The Distinction Between Waters Is Not Relevant to the Motions to Dismiss.</u>

For Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6), facts plead by the Menominee Tribe must be taken as true for the purposes of the motion to dismiss. *Killingsworth v. HSBC Bank of Nevada,* 507 F.3d 614, 618 (7th Cir. 2007). The salient fact is whether the Menominee River is used or could be used in its natural condition or with reasonable alteration, in interstate commerce. That is the definition under the Clean Water Act of waters where permitting under Section 404 must be retained by the Corps and not delegated to states. 33 U.S.C. § 1344(g). That is the only definition relevant to the Menominee Tribe's Complaint. The Tribe previously submitted evidence supporting this claim to the Defendants and is prepared to submit that evidence to this Court. How the Corps defines section 10 waters under the Rivers and Harbors

2

Act, a statute not at issue in this case, is not relevant to the consideration of whether the Menominee River meets the description of waters on which permits cannot be delegated to a state under the Clean Water Act. Finally, if the manner in which the Corps interprets and applies a statute other than the Clean Water Act is relevant to the underlying decision on the merits of the status of the Menominee River, it can be raised and argued at that time. However, that simply demonstrates that there is an issue that should be determined on the merits of the case and the Motion to Dismiss under Fed. R. Civ. Pro 12(b)(6) should be denied.

As for the Motions to Dismiss under Fed. R. Civ. P. 12(b)(1), factual distinctions concerning how the Corps applies different laws do not go to subject matter jurisdiction. Rather, it is the Menominee Tribe's understanding that the Defendants' Rule 12(b)(1) arguments in the Motions to Dismiss go to whether the Menominee Tribe is actually challenging a 1984 Memorandum of Understanding and whether the Tribe can maintain a cause of action against the Corps under the citizen suit provisions of the Clean Water Act, 33 U.S.C. § 1365, when the statute provides for suit against the Administrator of the Environmental Protection Agency rather than the Corps. How the Corps interprets and applies the Rivers and Harbors Act has no bearing on either of those questions.

> B. <u>Exhibit A to Defendants' Supplemental Brief Has No Bearing on the Issues Raised in the Motions to Dismiss or Whether The Menominee River Meets the Description of a Waterbody on Which 404 Permits Cannot Be Delegated to a State.</u>

In apparent support for its explanation on how it interprets "Section 10" waters differently than waters for which Section 404 permits cannot be delegated to a state, the Corps of Engineers attaches a one-page memorandum dated July 30, 2018, two days before the hearing on the Motions to Dismiss. Putting aside the question of how a document dated two days before the argument and 10 months after the Corps of Engineers' final agency action at issue here can

provide support for claims made during argument, the Exhibit is not relevant to this case because the content does not address the actual issue in this case.

The July 30, 2018 Memorandum purports to set forth a new policy at the Corps of Engineers whereby the Corps will apply lists of waters that it maintains as "Section 10 waters" under the Rivers and Harbors Act when determining the extent of delegation of Section 404 permitting to a state. Exhibit A at 1-2. The memorandum further provides that the section 10 list serves only as a "starting point" and that the Corps will adjust as necessary to comply with applicable regulations and case law. Exhibit A at 3.[3] It also provides that nothing in the memorandum addresses future delegations which will be made on a case-by-case basis. *Id.* The memorandum says nothing about the status of the Menominee River (a fact which should be taken as true as plead by the Tribe for the purposes of these Motions) or whether it is proper under 33 U.S.C. § 1344(g) for the Back Forty Section 404 permit to be overseen by the State of Michigan as opposed to the Corps. Finally, the July 30, 2018 Memorandum does not address any of the issues that must be determined on the Motions to Dismiss. Exhibit A is not relevant to the Court's consideration of the Motions to Dismiss.

II.  THE 1979 CORPS CONSULTANT'S FINDINGS, RECOMMENDATION AND MEMORANDUM ARE RELEVANT TO THE MERITS OF BOTH COUNTS.

The Defendants' argument in the second part of their Supplemental Brief regarding the 1979 Corps Consultant's findings, recommendation, and memorandum (the "1979 Memorandum") is unclear. The 1979 Memorandum is cited along with additional evidence by the Menominee Tribe as evidence that the Menominee River was and is used in the interstate

---

[3] Given this statement, it appears that the Corps understands it must revisit the question of what waters may or may not be amenable to permits issued by a state on a case-by-case and ongoing basis. This is precisely the request of the Tribe in August of 2017 as to the Back Forty Mine Section 404 Permit on the Menominee River, a request that the Defendants soundly rejected.

4

commerce.  It is appropriate and necessary for the Tribe's Complaint to include and cite to that kind of evidence in support of the Tribe's allegations.  Those allegations are taken as true for the purposes of Motions to Dismiss.  *Killingsworth*, 507 F.3d at 618.  *See also*, *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) and *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009) (for discussion of standard for motions under Fed. R. Civ. P. 12(b)(1)).

The Defendants appear to argue that the 1979 Memorandum is not relevant to whether the Corps is susceptible to a Clean Water Act citizen suit for failure of mandatory duty.  The Menominee Tribe would agree that whether the term Administrator in 33 U.S.C. § 1365(a)(2) should be read strictly is not affected by the 1979 Memorandum.

But, on the issue of the Corps' mandatory duty under the Clean Water Act citizen suit provision, or on the issue of whether the Corps acted arbitrarily, capriciously or contrary to law under the Administrative Procedure Act ("APA"), the 1979 Memorandum is relevant as a piece of evidence that the Menominee River was and is used in interstate commerce.  On the matter of the Tribe's claim under the APA, the 1979 Memorandum is part of the administrative record before the Defendants when they made the decision to reject the Tribe's request to assume jurisdiction over the Section 404 Permit for the Back Forty Mine.  The 1979 Memorandum, the Corps' own document prepared by its own consultant, opines that the Menominee River is a waterbody used in interstate commerce.  That matter goes to the merits of the APA claim and is a piece of evidence upon which the Defendants' decisions can and will be judged.

The 1979 Memorandum is also a piece of evidence foundational to the issue of whether the Corps had a mandatory duty to assume control of the permit because the permit could not be delegated to the State of Michigan under the Clean Water Act.  Under the language of 33 U.S.C. § 1344(g), if delegation of the permit to Michigan is improper because the Menominee River is

5

used in interstate commerce, the only option for issuing a Section 404 permit is for it to be overseen and issued by the Corps. This is an important point on the matter of mandatory duty that Defendants have either misunderstood or sought to obscure.

Which of two regulatory entities, the State or the Corps, must exercise jurisdiction over a permit that all the parties agree is necessary in order for the mine to move forward, is not a discretionary decision with the Defendants. First, there is no discretionary decision at issue regarding *whether* a Section 404 permit is necessary—the question addressed in *Huron Mountain Club v. U.S. Army Corps of Engineers*, 545 Fed. Appx. 390 (6th Cir. 2013) and in *Nat'l Wildlife Fed'n v. Corps of Engineers*, 404 F.Supp. 2d 1015 (M.D.Tenn., 2005) (where the court noted that the Corps has discretion to decide whether a particular wetland is "jurisdictional" such that a Section 404 permit is necessary, but that the Corps *may not* have discretion to simply forgo making that jurisdictional decision, citing *Scott v. City of Hammond,* 741 F.2d 992 (7th Cir. 1984)). All the parties here agree that a Section 404 permit is required if the mine project is to go forward on the Menominee River and its adjacent wetlands. Second, there is no discretionary decision at issue in this case about what the specific terms or requirements of that permit might be, which was the issue in *Northwest Environmental Def. Center v. Corps of Engineers,* 118 F.Supp. 2d 1115 (D.Or. 2000). The Tribe does not argue that the specific details of a permit rise to the level of a mandatory duty by the regulatory agency.

Rather, the only issue is whether the Corps has a mandatory duty to be the permitting entity when there will be a permit issued and the waterbody in question fits the description of waters for which permitting may not be delegated in 33 U.S.C. § 1344(g). On that question, the 1979 Memorandum by the Corps' own consultant and the 1983 memorandum by the Corps' own attorney are relevant to the consideration of where the obligation to oversee permitting lies. To

6

the extent, and it is unclear, that Defendants argue the Court should simply disregard these facts and relevant information on the Motions to Dismiss, the Defendants are wrong.

III. ARGUMENTS RAISED BY DEFENDANTS AND INTERVENOR IN SUPPLEMENTAL BRIEFING ARE UNTIMELY AND/OR CONTRARY TO APPLICABLE LAW.

As noted above, the Defendants and Intervenors raise a number of issues in their supplemental briefing that do not go to the question of the distinction between Section 10 waters and waters on which Section 404 permits cannot be delegated.

A. Michigan Is Not A Necessary Party.

Intervenor now claims that this matter should be dismissed because the State of Michigan is not a party. First, Aquila did not raise this in its Motion to Dismiss and supplemental briefing on the issue is inappropriate. Second, the argument is simply incorrect under the law. The State of Michigan is not an indispensable party under the factors set forth in *Askew v. Sheriff of Cook County, Ill.,* 568 F.3d 632, 635-36 (7th Cir. 2009) and *Perrian v. O'Grady,* 958 F.2d 192, 196 (7th Cir. 1992). *See also,* discussion in *Ochs v. Hindman*, 984 F.Supp.2d 903, 907-08 (N.D.Ill. 2013). The State of Michigan's "rights" to issue the permit, if any (a right that is delegated and subject to review and control by EPA) is fully protected as this matter moves forward. [4] If the Tribe is successful and the matter is remanded to the Defendants to reconsider their refusal to take over the Back Forty Section 404 permit (*see* below), the State may engage with the EPA and the Corps, may present evidence as to why the Menominee River does not meet the description in 33 U.S.C. § 1344(g), and may advocate that the permit remain with the State. It is possible the

---

[4] To date, the State of Michigan has been silent about its "interests" or "rights" in the issues raised by this litigation. For example, the State could file an amicus brief without submitting to the court's jurisdiction. The state's potential status as an indispensable party has been raised only by Intervenor in its Supplemental Brief.

7

EPA and Corps will, with additional information, agree with the State. If not, the State may challenge that decision. Finally, if the Court were to dismiss and force the Menominee Tribe to raise these claims in the state process, the Tribe would be forced into the very situation that it challenges here and that deprives the Tribe of its full rights, the type of situation that dictates retention of a case under Fed. R. Civ. P. 19(b). *Askew*, 568 F.3d at 635 (where the court notes dismissal is not the preferred outcome). *See also, Ochs,* 984 F.Supp.2d at 908.

        B.      <u>This Case May Be Brought As An As-Applied Challenge.</u>

Intervenor also argues that this case cannot be considered as an as-applied challenge to the delegation of the Back Forty Section 404 Permit to the State of Michigan. Intervenor is incorrect under the law. Courts have found that even if a rule or agency action is not invalid on its face, an as applied challenge can always be brought once the specifics of a situation or application of a decision become clear. *See Natural Resources Defense Council v. U.S. Environmental Protection Agency*, 896 F.3d 459, 466 (D.C. Cir. 2018). Moreover, the Supreme Court notes that the distinction between a facial and an as applied challenge is not so well defined that there is an automatic effect such that the manner in which such challenges are plead must be specific and sharply delineated. *Citizens United v. Fed'l Communications Comm'n,* 558 U.S. 310, 331 (2010). Rather, the distinction is more important for the breadth of the remedy to be employed by the Court, not what must be plead in the Complaint. *Id.* As the Seventh Circuit has found, a court may construe a challenge as either facial or as applied as the Court finds appropriate. *Six Star Holdings, LLC v. City of Milwaukee,* 821 F.3d 795, 803 (7th Cir. 2016). *See also, Center for Individual Freedom v. Madigan,* 697 F.2d 464, 475 (7th Cir. 2012).

Here, the Menominee Tribe has made clear that it is not challenging the overall delegation to the State of Michigan. The Tribe challenges only the decision by the federal Defendants, particularly the Corps of Engineers, to deny the Tribe's request that the Corps take

8

over the Section 404 Permit for the Back Forty Mine because the Menominee River is used, or could be used in its natural condition or with reasonable alteration, in interstate commerce as defined in 33 U.S.C. § 1344(g). While evidence from 1979 and 1984 is relevant in determining whether the Corps acted in violation of a mandatory duty or whether the Corps acted contrary to law or was arbitrary and capricious, reference to evidence from that period does not implicate a facial challenge to the 1984 delegation decision. As noted in the case law, the delegation to the State of Michigan is problematic now with this specific permit. The remedy sought by the Menominee Tribe is also specific to this section 404 Permit, not the overall delegation itself nor as to any past or future permit.[5] The Menominee Tribe's claims here are not out of time and may be pursued as an as applied challenge.[6]

IV. REMAND TO THE FEDERAL DEFENDANTS TO RECONSIDER EXERCISING JURSIDICTION OVER THE BACK FORTY SECTION 404 PERMIT IS APPROPRIATE AND AVAILABLE RELIEF.

Both the federal Defendants and Intervenor provide supplemental briefing on remedy, but again, the arguments presented do not go to the actual Motions to Dismiss. If the Court ultimately agrees with the Tribe that the Corps of Engineers either had a mandatory duty to exercise jurisdiction over the Section 404 permit here, or that the Corps of Engineers acted arbitrarily, capriciously, and contrary to law in denying the Tribe's August 2017 request to take over the permitting process, the Court can vacate the Corps' denial and remand the matter back

---

[5] Moreover, as stated at argument, the Menominee Tribe need not bring a facial challenge to the Memorandum of Understanding in 1984, looking 30 years into the future when a permit would actually be issued that may injure the Tribe's interests on the River. To do so is unreasonable, unnecessary, and would certainly have been met with standing objections from the Defendants concerning injury and causation of that injury.

[6] Intervenor also raises new arguments about "finality," "certainty," and "unfairness" to Intervenor that are without foundation in applicable legal principles in this Motion to Dismiss. *See also*, the discussion herein, part IV, about Defendants' arguments that the Tribe's claims were unripe but then "out of time" immediately upon becoming ripe.

9

to the Corps and EPA for reconsideration of the Tribe's request consistent with the Court's findings and rulings on the issues in the case (or to fulfill their mandatory duty). At that point, should the Federal Defendants determine, consistent with this Court's ruling, that the Back Forty Mine Section 404 Permit cannot be delegated to the State of Michigan because of the operation of 33 U.S.C. § 1344(g) and the nature of the Menominee River, the Defendants can engage in a Section 404 permitting process. The state-issued permit can still stand for application of Michigan state wetland laws, but its validity as a Section 404 permit would be in question and subject to challenge. The Menominee Tribe has preserved a challenge to the state-issued permit on a number of grounds and the State courts could implement this Court's ruling and find that the Section 404 portion of the state-issued permit is invalid and void.

Defendants and Intervenor appear to argue that this Court and the Menominee Tribe must simply accept the potentially illegal action here because the State of Michigan issued the final permit in question. Under the Defendants' theory, the Clean Water Act can be ignored and violated as to the Back Forty Section 404 Permit with little recourse for the Menominee Tribe as long as the State moves quickly to issue the final permit. But that is not the law.

It is also important to note that the Defendants and Intervenor argued strenuously in the Motions to Dismiss that the Menominee Tribe's claims were not ripe because the State of Michigan had not issued a final permit and therefore the EPA and Corps could still, at any moment, reconsider and take the permit back. Yet now, Defendants and Intervenor argue that upon the State of Michigan issuing the final permit, the Tribe's claims are foreclosed as too late because this Court cannot grant the relief of "remanding" the permit. Intervenor complains that the Menominee Tribe somehow sat on its claim "waiting until the permitting process was nearly complete" before it objected. Aquila Supp. Br. at 10. That is untrue in that the Tribe has been

10

Case 1:18-cv-00108-WCG   Filed 09/05/18   Page 10 of 13   Document 33

voicing strenuous objection to the mine since the inception, but more importantly, the Tribe's claims cannot, as argued by Aquila Resources, be unripe and then suddenly out of time or unfair due to lateness on the very day the claims become ripe. Intervenor's arguments on this point wholly lack coherence, logic, or merit.

Finally, Defendants and Intervenor get ahead of themselves because what remedy a court fashions, is generally addressed at the conclusion of the case on the merits. On the Motions to Dismiss, the matter before the Court at this time, the Menominee Tribe has properly stated a claim and this Court has jurisdiction under either Count One or Count Two. This matter should proceed under one or the other and should the Court need further briefing and argument concerning the proper remedy, the parties can fully address that issue at that time. The fact that the Tribe may need to pursue additional action to enforce a ruling from this Court in order to fully vindicate it rights and remedies relative to the Back Forty Mine is immaterial to whether the Menominee Tribe has stated a claim on which this Court has jurisdiction.

## CONCLUSION

The Menominee Tribe has stated timely claims against the Defendants under either the Clean Water Act citizen suit provision or the Administrative Procedure Act. The Menominee Tribe respectfully requests that the Court deny the Motions to Dismiss.

//

//

Respectfully submitted, this 5th day of September, 2018.

_____
JANETTE K. BRIMMER (WSB #41271)
STEPHANIE K. TSOSIE (WSB #49840)
(*Admitted on January 18, 2018)*
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104-1711
Phone: (206)343-7340 | Fax: (206)343-1526
jbrimmer@earthjustice.org
stsosie@earthjustice.org

LINDZEY SPICE (WI #1056513)
Menominee Indian Tribe of Wisconsin
P.O. Box 910
W2908 Tribal Office Loop Road
Keshena, WI 54135
Phone: (715) 799-5194
lspice@mitw.org

*Attorneys for Plaintiff Menominee Indian Tribe of Wisconsin*

12

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2018, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.

Participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Janette Brimmer*
Janette Brimmer
