| | |
|---|---|
| MENOMINEE INDIAN TRIBE OF WISCONSIN, | Case No. 1:18-cv-108 |
| Plaintiff, | Hon. William C. Griesbach |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, ANDREW WHEELER, Administrator, U.S. Environmental Protection Agency, U.S. ARMY CORPS OF ENGINEERS, MARK T. ESPER, Secretary, U.S. Army, | |
| Defendants, | |
| and | |
| AQUILA RESOURCES, INC., | |
| Intervenor-Defendant. | |

**AQUILA RESOURCES, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT**

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................................1
RELEVANT BACKGROUND ...........................................................................................1
    Aquila applies for and obtains a wetlands permit under Part 303 of Michigan's Natural Resources and Environmental Protection Act ................................................... 2
    Procedural History ................................................................................................. 3
ARGUMENT.......................................................................................................................5
    I.    Because EPA's decision to object to a permit application is discretionary, the Tribe's proposed Count III does not state a cognizable claim under the APA. ....... 5
    II.    Because EPA and the Corps do not have a mandatory duty to engage in NHPA consultation, the Tribe's proposed Count IV is not reviewable under the APA..... 8
CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Am. Paper Inst., Inc. v. U.S. E.P.A.*,
  890 F.2d 869 (7th Cir. 1989) ...................................................................................7, 8

*Coliseum Square Ass'n, Inc. v. Jackson*,
  465 F.3d 215 (5th Cir. 2006) ...........................................................................................9

*Foman v. Davis*,
  371 U.S. 178 (1962)..........................................................................................................5

*Friends of Crystal River v. U.S. E.P.A.*,
  35 F.3d 1073 (6th Cir. 1994) ...........................................................................................6

*Glick v. Koenig*,
  766 F.2d 265 (7th Cir. 1985) ...........................................................................................5

*Heckler v. Chaney*,
  470 U.S. 821 (1985)..........................................................................................................6

*Hist. Green Springs, Inc. v. EPA*,
  742 F. Supp. 2d 837 (W.D. Va. 2010) .........................................................................12

*Nat'l Mining Ass'n v. Fowler*,
  324 F.3d 752 (D.C. Cir. 2003) ......................................................................................11

*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004)............................................................................................................8

*Preservation Coalition, Inc. v. Pierce*,
  667 F.2d 851 (9th Cir. 1982) ...........................................................................................9

*Sheridan Kalorama Hist'l Ass'n v. Christopher*,
  49 F.3d 750 (D.C. Cir. 1995) ........................................................................................11

*United States v. 162.20 Acres of Land*,
  639 F.2d 299 (5th Cir. 1981) ...........................................................................................9

**Federal Statutes**

5 U.S.C. § 701...............................................................................................................4, 5, 8

5 U.S.C. § 706.........................................................................................................................8

33 U.S.C. § 1344............................................................................................................ *passim*

54 U.S.C. § 300320..........................................................................................................................10

54 U.S.C. § 306108............................................................................................................................9

**Rules**

Fed. R. Civ. P. 12..............................................................................................................................4

Fed. R. Civ. P. 15..............................................................................................................................5

**Regulations**

36 C.F.R. § 800..................................................................................................................................9

40 C.F.R. § 233........................................................................................................................3, 5, 6, 10

# INTRODUCTION

The Menominee Indian Tribe of Wisconsin (the "Tribe" or "Menominee Tribe") seeks leave to file an Amended Complaint to add two claims under the Administrative Procedures Act ("APA") based on the Environmental Protection Agency's ("EPA") alleged "withdrawal" of its objections to Aquila Resources, Inc.'s ("Aquila") state wetlands permit and the Federal Defendants' alleged failure to consult with the Tribe under Section 106 of the National Historic Preservation Act ("NHPA"). Like its original complaint, the Tribe's proposed amended complaint fails to set forth cognizable claims under the APA. Specifically, Proposed Count III is not reviewable under the APA because EPA's role in the Clean Water Act ("CWA") Section 404 permitting process, once it has been assumed by a state, is discretionary. Proposed Count IV is also unreviewable under the APA as the Federal Defendants have no duty to comply with Section 106 of NHPA because the Back Forty mining project is not a federal undertaking. The Tribe's proposed amendments are therefore futile. Accordingly, this Court should deny the Tribe leave to amend.

# RELEVANT BACKGROUND

The Court is familiar with the relevant facts in this case, which were fully briefed with respect to Aquila's motion to intervene and argued with respect to Federal Defendants' and Aquila's motions to dismiss. For the sake of brevity, Aquila will not repeat all of the facts in this brief, and instead refers the Court to its motion to intervene and motion to dismiss. (Aquila's Mot. to Intervene, Dkt. 14 at 3-10; Aquila's Mot. to Dismiss, Dkt. 19 at 2-5.) Additional facts specific to this brief are discussed in greater detail below.

**Aquila applies for and obtains a wetlands permit under Part 303 of Michigan's Natural Resources and Environmental Protection Act**

Michigan's Department of Environmental Quality ("MDEQ") administers Michigan's assumed Section 404 program under Part 303 of the Natural Resources and Environmental Protection Act ("NREPA"). Aquila initially submitted its application for a Part 303 wetlands permit to MDEQ on November 12, 2015. (Proposed Am. Compl. ¶ 55, Dkt. 35-1.)[1] As is typical, MDEQ issued correction requests to Aquila in December 2015 and then again in February 2016, seeking additional information about the Back Forty Project (the "Project"). Aquila responded to both requests and submitted an updated permit application containing additional information on April 18, 2016. At that point, MDEQ believed the application to be administratively complete, put the application out for public notice, and transmitted a copy of the application to EPA.

On August 15, 2016, MDEQ issued yet another correction request, and EPA issued a letter notifying MDEQ of its objections to issuance of a permit. (*Id.* ¶ 58.) After a September 2016 meeting between Aquila, MDEQ, EPA, and the United States Army Corps of Engineers (the "Corps"), the parties agreed that the best course of action was for Aquila to withdraw the application, work through remaining issues, and resubmit to MDEQ at a later date. (*See id.*)

Aquila resubmitted its Part 303 application on January 17, 2017. (*Id.* ¶ 59.) In response to another correction request by MDEQ, Aquila continued to tweak the application throughout 2017. (*Id.*) In December 2017, MDEQ deemed Aquila's permit application administratively complete and issued a public notice along with a public hearing announcement. (*Id.*) A public hearing was held on January 23, 2018, and the public comment period closed on February 2, 2018.

On March 8, 2018, EPA sent a letter to MDEQ, objecting to the application. EPA indicated that if its objections were not resolved within 90 days, authority to process the permit would

---

[1] The Tribe's Complaint mistakenly alleges that the application was filed in November 2016.

transfer to the Corps. (3/8/18 EPA Ltr., Dkt. 35-3; *see also* 40 C.F.R. § 233.50(i), (j).) On April 5, 2018, Aquila submitted a written response to EPA's March 8 letter. (*See* 5/3/18 EPA Ltr. at 1, Dkt. 35-5.) EPA and Aquila met on April 16, 2018 to discuss this information, and Aquila provided supplemental information to EPA on April 23, 2018. (*Id.*) On May 3, 2018, EPA sent another letter to MDEQ, noting that "[b]ased on the information EPA has received from Aquila, a number of objections identified in EPA's March 8 letter have been resolved." (*Id.*; *see also* 40 C.F.R. § 233.50(f).) EPA further noted that "we believe that there is a ready pathway for the resolution of EPA's remaining objections through MDEQ's inclusion of specific conditions in a final permit issued by June 6, 2018." (5/3/18 EPA Ltr. at 1, Dkt. 35-5; *see also* 40 C.F.R. § 233.50(f).) EPA stated that "[i]n order to assure that proposed permit conditions fully address EPA's objections, we request that MDEQ share these with EPA for review prior to permit issuance." (5/3/18 EPA Ltr. at 3, Dkt. 35-5; *see also* 40 C.F.R. § 233.50(f).) On May 31, 2018, MDEQ provided EPA a final draft of the permit including conditions intended to address EPA's objections. (*See* 6/1/2018 EPA Ltr., Ex F to Tribe's Contested Case Pet.) On June 1, 2018, EPA sent a letter to MDEQ indicating that the permit conditions satisfied EPA's objections. (*Id.*)

MDEQ issued Aquila a wetlands permit on June 4, 2018. (Proposed Am. Compl. ¶ 74, Dkt. 35-1; 40 C.F.R. § 233.50(f).) The permit includes several conditions suggested by EPA in its May 3 letter. The Tribe and two other parties have filed contested case petitions challenging the permit in Michigan's Administrative Hearing System. (*See* Contested Case Pets., Dkt. 32-1 to 32-3.) The Tribe's petition specifically challenges the permit conditions it claims are at "cross-purposes" with the CWA and the assumed 404 program. (Contested Case Pet., Dkt. 32-2 at 15-16.)

**Procedural History**

In August 2017, nearly two years after Aquila initially submitted its application for a wetlands permit to MDEQ under the assumed program, the Tribe sent a letter to EPA and the

3

Corps asserting that the wetlands adjacent to the Back Forty mine site are non-delegable waters, and therefore Michigan is not the proper permitting authority. The Tribe also complained that, pursuant to Section 106 of NHPA, EPA and the Corps were required to consult with the Tribe regarding cultural and historic sites along the Menominee River that would be affected by the wetlands permit. (Proposed Am. Compl. ¶ 61, Dkt. 35-1.) EPA and the Corps responded separately to this letter. (9/28/17 Corps Ltr., Dkt. 21-8; 10/13/17 EPA Ltr., Dkt. 21-9.) The Corps explained that it did not have authority to exercise jurisdiction over the Section 404 permit for the Project because Section 404 permitting had been delegated to Michigan. (9/28/17 Corps Ltr., Dkt. 21-8.) EPA did not address the issue of jurisdiction raised in the Tribe's letter, but instead offered to consult with the Tribe regarding the Section 404 permit process. (10/13/17 EPA Ltr., Dkt. 21-9.)

The Tribe filed its original complaint on January 22, 2018. (Compl., Dkt. 1.) The Tribe alleged two claims: (1) that EPA and the Corps violated their mandatory duties under CWA Section 404 due to their failure to exercise jurisdiction over the Menominee River and adjacent wetlands that are not delegable to the State of Michigan under 33 U.S.C. § 1344(g); and (2) that EPA and the Corps' responses to the Tribe's letters constitute final agency actions on the matter of exercising jurisdiction over the Section 404 permitting process that are arbitrary, capricious, and an abuse of discretion under the APA, 5 U.S.C. § 701 *et seq.* (*Id.*)

On March 30, 2018, EPA and the Corps filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Defs.' Memorandum in Support of Mot. to Dismiss, Dkt. 7.) Aquila subsequently intervened in the instant lawsuit and also filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Aquila's Mot. to Dismiss, Dkt. 19.) This Court heard oral argument on the motions to dismiss on August 1, 2018. At the hearing, the Court

requested that the parties submit supplemental briefing on the motions, which the parties completed in September 2018.

## ARGUMENT

Under Rule 15(a) of the Federal Rules of Civil Procedure, after a responsive pleading is served, a party may amend his or her complaint only by leave of court or by written consent of the adverse party. Fed. R. Civ. P. 15(a); *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985). Leave to amend shall be denied upon a showing of bad faith, undue delay, undue prejudice to the opposing party, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Indeed, "[t]he liberal amendment rules under Rule 15(a) do not require the courts to indulge in futile gestures." *Glick*, 766 F.2d at 268–69. A proposed amendment is a "futile gesture" if it could not withstand a motion to dismiss. *Id.* at 268.

**I.  Because EPA's decision to object to a permit application is discretionary, the Tribe's proposed Count III does not state a cognizable claim under the APA.**

Proposed Count III—the Tribe's claim that EPA's "withdrawal" of its objections to the assumed Section 404 permit was arbitrary and capricious—is unreviewable under the APA because EPA's assessment that its objections were resolved is discretionary.[2] Judicial review is unavailable under the APA where the challenged "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action is committed to agency discretion by law if the

---

[2] Contrary to the Tribe's assertions, EPA did not affirmatively "withdraw" its objections to the permit application, nor did it need to for MDEQ to issue its permit. Rather, EPA simply confirmed to MDEQ that the additional information provided by Aquila and MDEQ's permit conditions satisfied EPA's objections. The concept of "withdrawal" of objections to a Section 404 permit application under the assumed program only applies under the CWA if a public hearing is held on the objections (which did not happen here). Where no public hearing is held, if EPA lodges objections to a permit application, MDEQ must *resolve* those objections within 90 days in order to issue a state permit. 33 U.S.C. § 1344(j); 40 C.F.R. § 233.50(f)-(j). If EPA's objections are not resolved in that timeframe, MDEQ is prohibited from issuing a permit under its assumed authority and the Corps takes over the permitting process. 40 C.F.R. § 233.50(j). Here, they were resolved.

5

statute does not provide a "meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830-32 (1985).

Section 404 of the CWA and its corresponding regulations lack language compelling EPA to object to, comment on, or maintain objections to a proposed permit. *See* 33 U.S.C. § 1344(j); 40 C.F.R. § 233.50. Rather, Section 404 and its rules include language that explicitly leaves the objection process (including the assessment that objections have been resolved) to EPA's discretion. *Id.* For example, both the statute and rules provide that *if* the Administrator intends to comment on or object to a permit application or proposed permit, he must notify the state within 30 days. 33 U.S.C. § 1344(j); 40 C.F.R. § 233.50(d). Likewise, neither the statute nor the rules contains an objective standard by which to judge EPA's assessment that its objections have been resolved. Instead, the rules merely state "[i]n the event that the Director neither satisfies EPA's objections or requirement for a permit condition nor denies the permit, the Secretary shall process the permit application." 40 C.F.R. § 233.50(j). In other words, while EPA retains oversight over the permitting process when a state has assumed permitting authority under Section 404, the decision to object and the assessment as to whether objections have been resolved are left to the discretion of EPA. *See Friends of Crystal River v. U.S. E.P.A.*, 35 F.3d 1073, 1079 (6th Cir. 1994) ("an EPA decision to object does not constitute final agency action, while a decision not to object is within the sole discretion of the agency'").

The Tribe itself has acknowledged the discretionary nature of EPA's role in the 404 permitting process when it has been assumed by a state: "EPA retains the authority to review and object to proposed permits, but EPA *is not required* to comment or object to permits and EPA may categorically waive its review authority for most types of Section 404 permits. . . . Only if EPA *chooses* to object to a proposed permit and if a delegated state fails to adequately respond to EPA's

objection, then the Corps assumes jurisdiction of the permitting process." (Pl.'s Combined Resp. to Mots. to Dismiss at 5, Dkt. 21.) Likewise, in the Tribe's proposed amended complaint, the Tribe again acknowledges the discretionary nature of EPA's involvement in the 404 permitting process: "EPA *may* review and comment on a proposed permit. Further, the EPA *may* object to a proposed Section 404 permit." (Proposed Am. Compl., Dkt. 35-1 ¶ 49 (emphasis added).)

Notably, the Seventh Circuit rejected a similar APA claim involving EPA objections to a state NPDES permit on the basis that EPA's involvement in the analogous state-assumed permitting process is discretionary. *Am. Paper Inst., Inc. v. U.S. E.P.A.*, 890 F.2d 869, 875 (7th Cir. 1989). There, the court noted that the CWA expresses a clear intention to "preclude federal review of state-issued permits" and "to put the regulatory burden on the states and to give the [EPA] broad discretion in administering the program." *Id.* (citation omitted). The court went on to say that the statute "demonstrates an intent for the EPA and the states to work through differences in permitting decisions, and the EPA needs a range of discretion to accomplish this goal." *Id.* In other words, "[t]he federal courts should leave EPA with its discretion to review state-issued permits." *Id.* Any other result, according to the court, "would create an undesired bifurcated system whereby both state and federal district courts would hear challenges to state NPDES permits issued after EPA objection." *Id.*

This is equally true of the state permitting process under Section 404. Like the NPDES program, once a state has assumed jurisdiction over the 404 program, state officials—not the EPA—have primary responsibility for reviewing and approving 404 permits. 33 U.S.C. § 1344(g). This places the regulatory burden on states while at the same time providing EPA broad discretion to oversee the program—including the decision of whether to object to the permit and the assessment that EPA's objections have been adequately resolved.

In this sense, to the extent the Tribe wishes to challenge whether EPA's objections were adequately resolved by the permit conditions (*see* Proposed Am. Compl. ¶ 92, Dkt. 35-1 ("EPA's withdrawal of its objections is not evidence and record-based . . . .")), the APA is not the proper vehicle for doing so. Instead, the proper avenue for asserting this claim is by challenging the wetlands permit and its conditions in a state court proceeding, which the Tribe has already done. (*See* Contested Case Pet., Dkt. 32-2.) As the Seventh Circuit has noted, the propriety of an EPA objection is often at issue when reviewing a state-issued permit, and state courts are "perfectly competent" to review and decide such questions. *Am. Paper Inst.*, 890 F.2d at 875.

Accordingly, because EPA has broad discretion in administering the 404 program, including the decision to object to a permit or assess whether its objections are resolved, proposed Count III does not set forth a viable claim under the APA. The Tribe's proposed amendment is therefore futile.

## II. Because EPA and the Corps do not have a mandatory duty to engage in NHPA consultation, the Tribe's proposed Count IV is not reviewable under the APA.

The Tribe's proposed amendment alleging that EPA and the Corps violated NHPA by failing to consult with the Tribe is likewise futile because it also fails to set forth a viable APA claim. The Tribe alleges that it is entitled to "an order declaring EPA and the Corps in violation of the NHPA, and their failure to consult to be agency action unlawfully withheld, and/or arbitrary, capricious, an abuse of discretion, and/or agency action short of statutory right." (Proposed Am. Compl. ¶ 98, Dkt. 35-1.) While the APA permits a party to compel agency action that is "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), claims against an agency for a failure to act are available "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*," *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (emphasis in original); *see also* 5 U.S.C. § 701(a)(2) (judicial review

unavailable where the "agency action is committed to agency discretion by law"). Here, neither EPA nor the Corps had a mandatory duty to engage in Section 106 consultation because the Project is not a "federal undertaking" subject to Section 106 review under NHPA.

NHPA requires that all federal agencies "having indirect or direct jurisdiction over a proposed Federal or federally assisted undertaking . . . [or] having authority to license an undertaking shall . . . take into account the effect of the undertaking on any historic property." 54 U.S.C. § 306108. This section of the statute is purely procedural, it does not dictate substantive results. *Preservation Coalition, Inc. v. Pierce*, 667 F.2d 851, 859 (9th Cir. 1982). "Much like the EA/EIS process under NEPA, section 106 upholds the NHPA's objectives 'neither by forbidding the destruction of historic sites nor by commanding their preservation, but instead by ordering the government to take into account the effect any federal undertaking might have on them.'" *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 225 (5th Cir. 2006) (quoting *United States v. 162.20 Acres of Land,* 639 F.2d 299, 302 (5th Cir. 1981)). The statute itself does not prescribe how an agency must "take into account the effect of [its] undertaking." Rather, the Advisory Council on Historic Preservation's (the "Council") regulations set forth a number of steps the agency must take to determine whether an undertaking will adversely affect an historic property. 36 C.F.R. §§ 800.2-800.5. If adverse effects are found, the agency must consider ways to "avoid, minimize or mitigate" adverse effects on such properties. *See id*. § 800.6(a), (b)(1)(i).

Before even initiating a Section 106 review, an agency must first determine whether the proposed federal action is an "undertaking" because, as the Tribe has acknowledged, NHPA is triggered only by federal undertakings. (*See* Tribe's Mot. to Amend Compl., Dkt. 35 at 4.) NHPA defines an "undertaking" as a "project, activity, or program" including: "(1) those carried out by or on behalf of the agency; (2) those carried out with Federal financial assistance; (3) those

requiring a Federal permit, license, or approval; and (4) those subject to State or local regulation administered pursuant to a delegation or approval by a Federal agency." 54 U.S.C. § 300320.

The Tribe does not specify in its proposed complaint which definition of "undertaking" applies to the Project; rather, the Tribe merely states in a conclusory fashion that "EPA and the Corps have failed to initiate and complete consultation as required under Section 106 of the [NHPA]." (Proposed Am. Compl. ¶ 74, Dkt. 35-1.) Regardless, it is clear that the Project does not meet the definition of "undertaking" under NHPA.

First, it is undisputed that the mine is proposed by and funded by Aquila and its investors, and thus is not an activity carried out by or on behalf of the Federal agency or with Federal financial assistance. (*See* Proposed Am. Compl. ¶ 54, Dkt. 35-1.) The Project therefore does not qualify as a federal undertaking under subsections (1) or (2).

To the extent the Tribe believes the Project qualifies as a federal undertaking under subsection (3), the Tribe must show that the Project requires a federal permit. But because Michigan has assumed authority over the 404 permitting program, Aquila is required only to obtain a *state* wetlands permit under the assumed program, not a federal 404 permit. *See* 33 U.S.C. § 1344(g)(1).[3] Consequently, the only way the Tribe could establish that a federal 404 permit is required for the Project is to first establish that EPA and the Corps have a mandatory duty to assume jurisdiction over the permitting process, thereby requiring Aquila to obtain a federal 404 permit.[4] By its very nature, this claim is derivative of the Tribe's citizen suit claim under the CWA, in which the Tribe alleges that EPA and the Corps' alleged failure to exercise jurisdiction over the

---

[3] As explained in Aquila's motion to intervene, the other permits Aquila obtained for the Project were also state permits, not federal permits. (Aquila's Mot. to Intervene at 4-5, Dkt. 14.)

[4] Even if a federal permit was required for the Project (which it is not), EPA could not violate NHPA because the Corps, not EPA, would be responsible for processing the permit and engaging in Section 106 consultation. 40 C.F.R. § 233.50(j) ("In the event that the Director neither satisfies EPA's objections or requirement for a permit condition nor denies the permit, *the Secretary* shall process the permit application." (emphasis added)).

Section 404 permitting "is a violation of their mandatory duties to exercise jurisdiction over Section 404 permitting under the [CWA]."[5] (Compl. ¶ 57, Dkt. 1.)

In this sense, the Tribe's assertion that the proposed NHPA claim can "be brought regardless of the outcome on the Motions to Dismiss" is incorrect. (Tribe's Mot. to Amend Compl. at 9, Dkt. 35.) In other words, to the extent the Tribe is claiming that the Project is a federal undertaking under subsection (3) because it requires a federal 404 permit, the Tribe's proposed NHPA claim is directly tied to Count I of the Tribe's complaint; the Tribe can only state a plausible claim for relief under NHPA if Count I survives the pending motions to dismiss. As discussed at length in Federal Defendants' and Aquila's motions to dismiss, Count I should be dismissed because there is no mandatory duty for EPA and the Corps to exercise jurisdiction over the 404 permitting process. (Aquila's Mot. to Dismiss at 6-7, Dkt. 19; Defs.' Memorandum in Support of Mot. to Dismiss, Dkt. 7.) Thus, to the extent the Tribe alleges that the Project is a federal undertaking under subsection (3), the Tribe's proposed NHPA claim is futile.[6]

On the other hand, if the Tribe is alleging that the Project qualifies as a federal undertaking under subsection (4), this claim also fails as a matter of law. State regulated projects only qualify as undertakings subject to Section 106 review under subsection (4) if they are federally funded or federally licensed. *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752, 760 (D.C. Cir. 2003) ("[S]ection 106 confers on the Council jurisdiction over '*federally funded* or *federally licensed* undertakings' only."); *see also Sheridan Kalorama Hist'l Ass'n v. Christopher*, 49 F.3d 750, 755 (D.C. Cir. 1995) ("[T]he text of § 106 still applies by its terms only to *federally funded* or *federally licensed*

---

[5] As noted in Aquila's motion to dismiss, the Tribe's CWA citizen's suit claim matured in 2015 when Aquila applied for a wetlands permit with the State of Michigan under the assumed Section 404 program. Because the Tribe's NHPA claim is derivative of its CWA claim, the Tribe's NHPA claim also matured at that time and should have been filed, at the very least, when the original complaint was filed.

[6] The Tribe makes much of the fact that in its October 13, 2017 letter, EPA offered to "consult" with the Tribe regarding the Section 404 process. (Tribe's Mot. to Amend Compl. at 5, Dkt. 35.) However, this offer to consult does not establish that EPA had a mandatory duty to engage in Section 106 consultation.

undertakings."); *Hist. Green Springs, Inc. v. EPA*, 742 F. Supp. 2d 837, 854 (W.D. Va. 2010) (holding that NHPA did not apply to a project requiring a state NPDES permit under subsection (4)). Because the Project is not a federally funded or federally licensed undertaking, it is not a federal undertaking subject to Section 106 review under this definition either.[7]

Because the Project does not involve a federal undertaking subject to Section 106 review, the Tribe cannot establish that EPA or the Corps violated a discrete, nondiscretionary duty to engage in NHPA consultation under Section 106. Accordingly, the Tribe's proposed Count IV is also futile.

## CONCLUSION

Because the Tribe's proposed amendments are futile, Aquila respectfully requests that the Court deny the Tribe's motion to amend its complaint.

Respectfully Submitted,

WARNER NORCROSS & JUDD LLP

Dated: October 10, 2018    By */s/ Ashley G. Chrysler*
　　　　　　　　　　　　　　Ashley G. Chrysler
　　　　　　　　　　　　　　Dennis J. Donohue
　　　　　　　　　　　　　　Daniel P. Ettinger
　　　　　　　　　　　　　　Warner Norcross & Judd LLP
　　　　　　　　　　　　　　900 Fifth Third Center
　　　　　　　　　　　　　　111 Lyon Street NW
　　　　　　　　　　　　　　Grand Rapids, Michigan 49503
　　　　　　　　　　　　　　(616) 752-2000

　　　　　　　　　　　　　　*Attorneys for Intervenor Aquila Resources, Inc.*

　　　　　　　　　　　　　　Ronald R. Ragatz
　　　　　　　　　　　　　　Henry J. Handzel, Jr.

---

[7] The mere fact that EPA has oversight over state-assumed programs does not give rise to a federal undertaking. Indeed, federal agencies have never been required to conduct NHPA review for state-assumed NPDES or 404 programs on this basis alone; imposing such a requirement would upend these permitting programs.

DeWitt Ross & Stevens S.C.
2 E. Mifflin Street, Suite 600
Madison, Wisconsin 53703
(608) 252-9351

*Co-Counsel for Intervenor Aquila Resources, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2018, I electronically filed the foregoing Memorandum in Opposition to Plaintiff's Motion to Amend Complaint with the Clerk of the Court by using the CM/ECF system. The participants in this case are registered CM/ECF users and service will be accomplished via the CM/ECF system.

*Ashley G. Chrysler*
Ashley G. Chrysler

17594828-5