UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

MENOMINEE INDIAN TRIBE OF
WISCONSIN,

               Plaintiff,

U. S. ENVIRONMENTAL PROTECTION
AGENCY, ANDREW WHEELER[1], Acting
Administrator, U. S. Environmental
Protection Agency, U. S. ARMY CORPS OF
ENGINEERS, MARK T. ESPER, Secretary,
U.S. Army,

               Defendants,

AQUILA RESOURCES, INC.,

               Intervenor-Defendant.

No.  1:18-cv-00108-WCG

Hon. William C. Griesbach

---

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO AMEND COMPLAINT**

---

[1] Please note that pursuant to Fed. R. Civ. P. 25(d)(1), Andrew Wheeler, Acting Administrator of the U.S. Environmental Protection Agency, is substituted for Scott Pruitt.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................2

I.      LEAVE TO AMEND SHOULD BE FREELY GIVEN AND FUTILITY
        CONSTRUED AS A NARROW EXCEPTION. ...............................................2

II.     EPA'S WITHDRAWAL OF ITS OBJECTION TO THE SECTION 404
        WETLANDS PERMIT IS FINAL AGENCY ACTION SUBJECT TO JUDICIAL
        REVIEW. ..........................................................................................................3

        A.      EPA's Withdrawal Of Its Objection Is Final Agency Action. ..................3

        B.      EPA's Withdrawal Of Its Objection Is Not Action Fully Committed To
                Agency Discretion By Law As There Is Law For The Court To Apply And
                Against Which The Court Can Judge EPA's Action. ..............................6

        C.      Federal And State Court Review Are Not Mutually Exclusive. ............11

III.    THE TRIBE'S NHPA CLAIM IS NOT CLEARLY INSUFFICIENT OR
        FRIVOLOUS ON ITS FACE AND IS NOT FUTILE BECAUSE THE
        STATUTE SUPPORTS THE CLAIM AND THE CASE LAW IS UNSETTLED. .........12

CONCLUSION ..................................................................................................................15

Case 1:18-cv-00108-WCG   Filed 11/01/18   Page 2 of 21   Document 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967)................................................................................................6

*American Paper Institute, Inc. v. U.S. E.P.A.*,
    890 F.2d 869 (7th Cir. 1989) ............................................................................8, 9

*Bennett v. Spear*,
    520 U.S. 154 (1997)................................................................................................5

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971)................................................................................................6

*Foman v. Davis*,
    371 U.S. 178 (1962)................................................................................................2

*Friends of Crystal River v. U.S. E.P.A.*,
    35 F.3d 1073 (6th Cir. 1994) ..........................................................4, 5, 9, 10, 11

*Glick v. Koenig*,
    766 F.2d 265 (7th Cir. 1985) ................................................................................2

*Heckler v. Cheney*,
    470 U.S. 821 (1985)................................................................................................6

*Historic Green Springs v. EPA*,
    742 F. Supp. 2d 837 (W.D. Va. 2010) ................................................................14

*Jackson Nat'l Life Ins. Co. v. Greycliff Partners, Ltd.*,
    2 F. Supp. 2d 1164 (E.D. Wis. 1998)....................................................3, 11, 14

*Life Plans, Inc. v. Security Life of Denver Ins. Co.*,
    800 F.3d 343 (7th Cir. 2015) ................................................................................2

*Marquette County Road Comm'n v. U.S. E.P.A.*,
    726 Fed.Appx. 461 (6th Cir. 2018)..........................................................4, 5, 12

*Marquette Cty. Road Comm'n v. U.S. EPA*,
    188 F.Supp. 3d 641 (W.D.Mich. 2016) ................................................................5

*Michigan Peat, a Div. of Bay-Houston Towing Co. v. U.S. E.P.A.*,
    175 F.3d 422 (6th Cir. 1999) ................................................................................4

ii

*Nat'l Mining Ass'n v. Fowler,*
    324 F.3d 752 (D.C. Cir. 2003) ..............................................................................12, 13, 14

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago,*
    786 F.3d 510 (7th Cir. 2015) ...........................................................................................2, 12

*Sheridan Kalorama Historical Ass'n v. Christopher,*
    49 F.3d 750 (D.C. Cir. 1995) ...............................................................................................14

**Statutes**

5 U.S.C. § 701(a)(1)-(2) ........................................................................................................6

16 U.S.C. § 470a ..................................................................................................................13

16 U.S.C. § 470w .................................................................................................................13

33 U.S.C. § 1342(d) ...............................................................................................................9

33 U.S.C. § 1344(b) ...............................................................................................................8

33 U.S.C. § 1344(c) ............................................................................................................7, 9

33 U.S.C. § 1344(j) ..........................................................................................................3, 7, 8

54 U.S.C. § 300320 ..............................................................................................................13

54 U.S.C. § 302701 ..............................................................................................................13

**Other Authorities**

36 C.F.R. § 800.2(c)(2)(ii) ...................................................................................................13

36 C.F.R. § 800.2(c)(4) ........................................................................................................14

40 C.F.R. Pt. 230 ...............................................................................................................8, 9

40 C.F.R. § 123.44 .................................................................................................................9

40 C.F.R. § 233.31(a) .............................................................................................................8

40 C.F.R. § 233.50(e) .............................................................................................................8

40 C.F.R. § 233.50 et seq. .......................................................................................................8

40 C.F.R. § 233.50(j) ..............................................................................................................3

Fed. R. Civ. P. 15(a)(2) ...............................................................................................2, 13, 15

iii

## INTRODUCTION

The Menominee Indian Tribe of Wisconsin's ("Tribe") Motion to Amend to include two additional causes of action is not futile and should be granted. The Tribe's additional claims against the Environmental Protection Agency ("EPA") and Army Corps of Engineers ("Corps") is based on a simple factual timeline:

- EPA objected to a draft permit proposed by the state pursuant to federal delegated authority;

- EPA's objection prohibited the state from issuing a Section 404 permit under delegated state authority;

- the state modified the permit;

- EPA subsequently withdrew its objection citing to the revisions as bases and conditions for the withdrawal;

- and finally, the state issued the permit.

Once EPA withdrew its objections and the state agency, Michigan Department of Environmental Quality ("MDEQ"), issued the Section 404 permit, the Tribe's two additional claims in the Tribe's Motion to Amend ripened.

The Tribe's proposed Third Cause of Action is pursuant to the Administrative Procedure Act ("APA"), and asserts that EPA's withdrawal of its objection to the Permit is arbitrary, capricious, and contrary to the Clean Water Act and its implementing regulations. *See* Tribe's Motion to Amend [ECF No. 35] at 5-6, Proposed First Amended Complaint [ECF No. 35-1] at 2, 3, 22-23. The Tribe's Fourth Cause of Action is pursuant to the APA and claims that EPA and the Corps (collectively "Federal defendants") failed to consult with the Tribe under Section 106 of the National Historic Preservation Act ("NHPA"), which was required because the permit was issued pursuant to a federally delegated program. Proposed First Amended Complaint at 23.

1

Federal defendants and Intervenor-Defendant Aquila Resources, Inc. ("Aquila") oppose the Tribe's Motion to Amend only on the grounds that the Tribe's Motion is futile, but the crux of their argument as to the proposed third claim focuses on the wrong point. The Tribe's claim rests not on EPA's decision to object, but rather on EPA's decision to withdraw its objection as final agency action that is arbitrary, capricious, and contrary to law. The Tribe's NHPA claim is the subject of unsettled law and the only case addressing the issue did so in a manner that is contrary to the plain language of the statute. Federal defendants and Aquila have not met their burden to demonstrate that the Tribe's claims are precluded from judicial review and therefore the Court should grant the Tribe's Motion to Amend its Complaint.

ARGUMENT

I. LEAVE TO AMEND SHOULD BE FREELY GIVEN AND FUTILITY CONSTRUED AS A NARROW EXCEPTION.

Leave to amend pursuant to Fed. R. Civ. P. 15(a)(2) should be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion for leave to amend "shall be denied *only* upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Life Plans, Inc. v. Security Life of Denver Ins. Co.*, 800 F.3d 343, 357-58 (7th Cir. 2015) (citing *Foman*, 371 U.S. at 182) (emphasis added). The liberal standard for amending a complaint under Rule 15(a)(2) "is especially important in cases where law is uncertain." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 520 (7th Cir. 2015). "Applying the liberal standard for amending pleadings, especially in the early stages of a lawsuit, is the best way to ensure that cases will be decided justly and on their merits." *Id.* at 520. A district court may deny a motion to amend on the basis of futility if the proposed amendment could not withstand a motion to dismiss. *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985). The concept of futility as a bar to amendment, is a narrow one that generally applies only where

2

the proposed claim is clearly insufficient or frivolous on its face. *Jackson Nat'l Life Ins. Co. v. Greycliff Partners, Ltd.*, 2 F. Supp. 2d 1164, 1168 (E.D. Wis. 1998). Further, the liberal standard for motions to amend gives the parties and the Court the needed latitude to make decisions on the merits and "based on a fully-briefed dispositive motion, not on a finding of futility" made within a more-constrained motion to amend context. *Id.*

As set forth below, the Tribe's claims are not clearly insufficient or frivolous on their face, and thus the Tribe's claims are not futile. The Tribe's Motion to Amend fully meets the requirements for amending its Complaint.

II. EPA'S WITHDRAWAL OF ITS OBJECTION TO THE SECTION 404 WETLANDS PERMIT IS FINAL AGENCY ACTION SUBJECT TO JUDICIAL REVIEW.

There are two important considerations on the question presented by defendants' futility arguments in response to the Motion to Amend; there must be a final agency action and that final agency action must be reviewable by the court. Both requirements are satisfied here.

A.    EPA's Withdrawal Of Its Objection Is Final Agency Action.

In its attempt to shield EPA action from review, Aquila mischaracterizes EPA's action as something less than an affirmative withdrawal of its objection, and then builds on this tenuous concept to argue that there is no final agency action. Aquila Opp. at 5, n.2. Aquila's characterization is contrary to the facts and the law. First, the law is clear that the state cannot issue the proposed permit without EPA withdrawing its objection either because EPA chooses to do so or because the state and EPA reach some accord to resolve the objection. 33 U.S.C. § 1344(j); 40 C.F.R. § 233.50(j). Because the state cannot issue a permit unless EPA's objections are resolved (contrary to Aquila's contention, Aquila Opp. at 5, n.2), there must be a point where EPA decides that its objections are actually resolved and acts on that decision. On June 1, 2018, EPA informed MDEQ that it agreed that MDEQ's Draft Permit dated May 31, 2018 would

3

satisfy EPA's objections as long as DEQ issued the permit in a timely manner.  See Letter from EPA to MDEQ, July 1, 2018, attached as Exhibit A to the Declaration of Stephanie Tsosie. Aquila's attempt to redefine the word "withdraw" is contrary to the statute, implementing regulations, and logical decision making processes.

Second, case law from the Sixth Circuit has addressed the issue of finality and objections to state-issued Section 404 permits.[2]  In *Michigan Peat, a Div. of Bay-Houston Towing Co. v. U.S. E.P.A.*, 175 F.3d 422 (6th Cir. 1999), the court found that the question of whether EPA's objections (or withdrawals thereof) are judicially reviewable more appropriately turn on the question of whether there is final agency action.  *Id*. at 428.  In *Michigan Peat*, EPA objected to part of a state permit.  EPA eventually withdrew its objection after the state, the permittee, and EPA made several attempts to revise the permit and resolve the objection.  *Id*. at 425.  However, after EPA withdrew its objection, the permittee and the state entered into various stipulations that further modified the permit from what EPA reviewed and the state issued a "state-only permit." *Id*. at 426-27.  On review of a challenge by the permit-holder to conditions required in the permit, the Sixth Circuit found that the "logical conclusion" of EPA withdrawing its objection is that EPA's action was final: "Statutorily, there was nothing left for the EPA to do once it signed off on the proposed permit."  *Id*. at 428.  Because there was final agency action, EPA's objection was reviewable.  This finding comports with discussions and findings in other cases.

Following a similar line of analysis, in *Friends of Crystal River v. U.S. E.P.A.*, 35 F.3d 1073, 1079 (6th Cir. 1994) and *Marquette County Road Comm'n v. U.S. E.P.A.*, 726 Fed.Appx.

---

[2] The Seventh Circuit and district courts within the Circuit have not addressed EPA objections to Section 404 permits.

461, 466, 468 (6th Cir. 2018),[3] the courts found that an EPA objection to a state-proposed Section 404 permit is not itself a final agency action before a final permit is issued because it is not the consummation of the permitting process. In *Marquette County*, the court found EPA could still withdraw or modify the objection or transfer permitting to the Corps. *Id.* at 466. In *Crystal River*, the court harmonized cited case law to find that an EPA decision to object is not final agency action, and that this was consistent with cases that found an objection could be reviewed, after the culmination of the permitting process. *Crystal River*, 35 F.3d at 1079. Both cases also conclude that if EPA objects, and then later withdraws that objection and allows a state to issue a final permit, EPA's withdrawal of its objection is a final agency action. *Marquette County*, 726 Fed.Appx. at 467; *Crystal River*, 35 F.3d at 1079.[4] Importantly, the court in *Marquette County* highlighted the fact that EPA agreed with this result in its briefing where EPA conceded that "'[h]ad MDEQ denied the permit or issued a permit with conditions resolving EPA's objection, the permitting process would have been at an end, and the [permittees] could then have sought review if it was dissatisfied with the result.'" *Id.* at 467. This analysis makes sense in light of the definition of final agency action: an action that is a consummation of the federal process that alters the legal rights and responsibilities of the affected parties and/or has legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Indeed, Federal defendants argued earlier in their Motion to Dismiss here that the Tribe's claim was not yet ripe because "EPA's objection marks the beginning of EPA's oversight process."

---

[3] On appeal from *Marquette Cty. Road Comm'n v. U.S. EPA,* 188 F. Supp. 3d 641, 647-48 (W.D.Mich. 2016).

[4] Specifically, the court in *Crystal River* held that EPA's withdrawal of its objection and transfer back to the state permitting authority was subject to judicial review in federal court. *Id.* at 1079.

Fed. Motion to Dismiss [ECF 7] at 13.  And although the objection itself is merely a step in the process, the withdrawal brings that process to a close.

In this case EPA's withdrawal allowed MDEQ to issue a final Section 404 permit that resolved EPA's objections and the Tribe is now seeking review.  There is final agency action.

B.  EPA's Withdrawal Of Its Objection Is Not Action Fully Committed To Agency Discretion By Law As There Is Law For The Court To Apply And Against Which The Court Can Judge EPA's Action.

The APA provides that final agency action is judicially reviewable unless (1) judicial review is precluded by statute, or (2) the agency action is fully committed to agency discretion by law.  5 U.S.C. § 701(a)(1)-(2).  The presumption that final agency action is judicially reviewable can only be overcome by clear and convincing evidence to the contrary.  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141 (1967)).  The exception for agency action committed to agency discretion by law is "a very narrow exception" and is only applicable "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Overton Park*, 402 U.S. at 410.  The narrow exception to reviewability applies only where there are no judicially manageable standards available for judging how and when an agency should exercise its discretion, making it impossible to evaluate an agency action for 'abuse of discretion.' *Heckler v. Cheney*, 470 U.S. 821, 830 (1985).  *See also Overton Park*, 402 U.S. at 410.  The Supreme Court in *Heckler* found that once an agency does take discretionary action, it must not abuse its discretion in making agency decisions or taking final agency actions.  *Heckler*, 470 U.S. at 829-31.

The Tribe asserts that EPA's decision to withdraw its objection to the state Section 404 wetland permit was arbitrary, capricious, and contrary to law under the APA.  EPA's decision

and ultimate action withdrawing its objection is judicially reviewable final agency action that is not committed to agency discretion by law.

Aquila's and the Federal Defendants' opposition to the Tribe's motion to amend is based, in part, on their claim that there are no standards or regulations by which to measure EPA's exercise of discretion, Aquila Opp. at 5-6, but Federal defendants and Aquila have not overcome the presumption that EPA's withdrawal of its objection (the proposed Third Claim), is subject to judicial review. First, their arguments are focused on the wrong action. Aquila in particular argues that EPA has unfettered discretion whether to object to a state-proposed Section 404 permit, Aquila Opp. at 6 and 7, but this misses the mark. The Tribe is not challenging whether or not EPA objected. The Tribe's claim focuses on the fact that EPA did object, and it did so based on its decision that the draft permit did not comply with the Clean Water Act or Section 404(B)(1) Guidelines, and then it withdrew its objection. What Aquila's (and Federal Defendants') misdirected focus fails to acknowledge or address is that once EPA inserts itself into the permitting process by objecting on the basis that the draft permit did not comply with the law, its decision to withdraw that objection must be firmly rooted in the law. EPA's decision is reviewable and must be held up against the Clean Water Act, its implementing regulations, EPA's own rules, and the record.

Second, there is law for the Court to apply and to judge EPA's withdrawal of its objection. The Clean Water Act clearly prohibits a state from issuing a CWA Section 404 permit pursuant to its delegated authority if EPA objects to a draft permit on the grounds that the proposed permit is "outside the requirements of this section, including, but not limited to, the guidelines developed under subsection (b) of this section unless it modifies such proposed permit in accordance with such comments." 33 U.S.C. § 1344(j). Further, 33 U.S.C. § 1344(c)

7

authorized EPA to prohibit permitting entities from using some sites for discharge of dredged or fill material, whenever EPA determines that the discharge of materials into such an area will have an unacceptable adverse effect on municipal water supplied, shellfish beds and fishery areas, wildlife or recreation.

EPA's regulations governing Section 404 permitting programs, developed pursuant to the direction in 33 U.S.C. § 1344(b), specifically state that "[a]ny such [permit] objection shall be based on the [EPA's] determination that the proposed permit is (1) the subject of an interstate dispute under § 233.31(a) and/or (2) outside requirements of the Act, these regulations, or the 404(b)(1) Guidelines." 40 C.F.R. § 233.50(e).  EPA's Section 404 permitting rules (known as the 404(b)(1) Guidelines) are detailed, extensive, and govern EPA's review of all Section 404 permits, whether issued by the Corps or a delegated state. *See* 40 C.F.R. Pt. 230.  The purpose of judicial review of EPA's withdrawal of its objection is to discern whether or not EPA acted arbitrarily, capriciously, or otherwise not in accordance with the law as outlined in 33 U.S.C. § 1344(j), 40 C.F.R. § 233.50 et seq., and the 404(b)(1) Guidelines (at 40 C.F.R. part 230). These standards outlined in both statute and regulation demonstrate that there is law to apply when EPA exercises discretion in committing final agency action, and that provides a legal framework in which to evaluate an agency for abuse of discretion.

In addition to their misdirected statutory arguments, Federal defendants and Aquila point to *American Paper Institute, Inc. v. U.S. E.P.A.*, 890 F.2d 869 (7th Cir. 1989) to support their claim that the Tribe's Motion to Amend should be denied as futile, but their reliance is misplaced again because of a focus on the wrong point in EPA's actions and process.  The Tribe's challenge in this case is different in facts and posture than that in *American Paper*.  The plaintiffs in *American Paper* were the permit-holders and they challenged EPA's authority to object to

plaintiff's own NPDES permits issued by a state that had delegated authority to issue permits.[5]

*Id.* at 872. That is, the plaintiffs were challenging EPA's authority to act and object at all, not

whether EPA, once it acted, did so in an arbitrary and capricious manner or contrary to law.

Further, the argument presented to the court in *American Paper* was whether judicial review in

the Circuit Court was precluded by law based on an outdated statutory provision specific to

NPDES permits. *Id.* at 872-73. The Seventh Circuit only found that it should leave EPA with

the discretion to review state-issued permits, *Id.* at 875, and not that a withdrawal of an objection

is an action left to agency discretion by law. The Seventh Circuit did not reach, because it was

not at issue, whether the substance and merits of EPA's decision to withdraw its objection is

reviewable, which is the issue in the Tribe's proposed Third Claim. The *American Paper* case

does not dictate a result where the Tribe's proposed Third Claim would be futile.

 *Crystal River* also fails to support Federal defendants' argument. Federal Defendants

simply cite to a single statement in *Crystal River* stating that transfer of the permitting process

back to the state was non-discretionary and not reviewable, without providing any critical

analysis or discussion of the context of that statement in the case. Fed. Opp. at 6-7. The court in

*Crystal River* was actually addressing a convoluted factual scenario where EPA objected to a

---

[5] It is also important to point out the difference between EPA objections within the NPDES permitting program at issue in *American Paper*, (often referred to as the Section 402 permitting program) and EPA objections in the Section 404 permitting program at issue in this case. Under Section 402 delegated permitting, a state must send EPA the proposed permits and EPA can object. 33 U.S.C. § 1342(d). The statute provides no guidance or outline for those objections. EPA's regulations amount to a single section that provides topics on which EPA can object. 40 C.F.R. § 123.44. In contrast, as outlined above, Section 404 describes EPA's authority to object when a proposed permit (whether by the Corps or a delegated state) will "have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas, wildlife, or recreational areas." 33 U.S.C. § 1344(c). Further, EPA has extensive regulations outlining the details of these decisions and on what grounds an EPA objection will or should be lodged against a state-proposed permit. 40 C.F.R. pt. 230.

draft permit, but the state did not take any action to resolve those objections, so by operation of law the permitting authority transferred to the Corps. Only after permitting authority transferred to the Corps did the state work to resolve EPA's objections, at which point the court found that EPA could not withdraw its objection, because it no longer had the statutory authority to do so. Federal defendants' reliance on this case again misses the central issue of the Tribe's claim, which is whether or not EPA's withdrawal of its objection, allowing the state to issue a final permit, was arbitrary, capricious, or contrary to law. Federal Defendants also attempt to distance *Crystal River* by arguing the court did not review the merits of EPA's objections or the merits of EPA's decision to withdraw those objections. Fed. Opp. at 6, 7. This is outside the bounds of both the Tribe's Motion to Amend and Federal defendants' opposition on the grounds that amendment is futile. The question in *Crystal River*, and the question raised by Federal defendants and Aquila in their opposition, is whether or not EPA's withdrawal of its objection to a proposed state permit is judicially reviewable. The Tribe seeks review of the actual substance, merits, or conformity of EPA's final agency action to the Act and EPA regulations. The merits of EPA's withdrawal of its objection should be the subject of substantive briefing, rather than in briefing on the Tribe's Motion to Amend.

Further, a close reading of *Crystal River* indicates that the court found that neither exception to the presumption of judicial review were available in this case. The court found that the CWA did not specifically preclude judicial review and there was no Congressional intent to do so in the context of Section 404 permitting. *Id*. at 1078. The court also noted that judicial review was not precluded because "the transfer of authority to the Army Corps is not so discretionary that there is no law to apply". *Id.* at 1079, n.12. In the same stroke the court

acknowledges that EPA's withdrawal is a final decision and review is appropriate. *Id.*[6] The Federal Defendants' conclusory argument not only glosses over the details of the case and the legal framework in which an agency action is committed to discretion by law, but it also still fails to directly address the Tribe's actual arguments.

Because Federal defendants and Aquila do not meet their burden to demonstrate that EPA's action is committed to agency discretion by law, their argument that the Tribe's Motion to Amend the Complaint is futile must fail and the Tribe's Motion to Amend should be granted.

C.   Federal And State Court Review Are Not Mutually Exclusive.

Finally, judicial review of EPA's withdrawal of its objection is proper in the federal court and does not create a tension between federal court and state court review. Not only does the caselaw indicate that this tension can be resolved, *see Friends of Crystal River*, 35 F.3d at 1079, it is also not a recognized factor to consider in determining whether an agency action is committed to agency discretion by law. Federal defendants' and Aquila's concerns of creating a bifurcated review of the permits in both federal court and in state court carry no legal weight as it does not demonstrate that the Tribe's claim is clearly insufficient or frivolous on its face. *Jackson Na'l. Life Ins. Co.*, 2 F. Supp. 2d at 1168.

Even as a policy argument, the basis for those concerns are not at issue in this case. Fed. Opp. at 5-6; Aquila Opp. at 7-8. In this case, the Tribe is challenging EPA's final agency action as arbitrary, capricious, and contrary to law, but not the overall substance of the final permit

---

[6] Notably, the court acknowledges a case from the Fifth Circuit that suggests that even a failure to object by EPA may be reviewable in federal court *if there were some allegation that EPA had not acted in conformity with its own guidelines. Crystal River*, 35 F.3d at 1078-79 (emphasis added). The court did not disagree with that case and instead ruled that its findings could exist side-by-side with the Fifth Circuit's suggestion. *Id.* at 1079.

11

issued by MDEQ.  As such, it is EPA's actions in this case that are being reviewed in federal court against statutory and regulatory standards imposed by EPA's own regulations and the Clean Water Act, not the state permit.  As the Sixth Circuit in *Marquette* acknowledged, the federal delegation of permitting authority to the states does not separate the permitting process, "but rather creates 'one continuous application process to obtain a Section 404 permit, of which state-run permitting programs are one part.'"  *Marquette*, 726 Fed.Appx. at 467.  Review of EPA's withdrawal of its objection in this case is a review of EPA's federal action.  All parties are aware that Aquila's Section 404 permit is being challenged in the state process, and that challenge will review the MDEQ's approval process.  Aquila Opp. at 3.  These separate challenges reflect the fact that the permitting system, although a streamlined process, still has distinct federal and state requirements and decision points.  EPA's decision to withdraw its objection is final agency action that is judicially reviewable in federal court.

III.   THE TRIBE'S NHPA CLAIM IS NOT CLEARLY INSUFFICIENT OR FRIVOLOUS ON ITS FACE AND IS NOT FUTILE BECAUSE THE STATUTE SUPPORTS THE CLAIM AND THE CASE LAW IS UNSETTLED.

The Tribes states a reviewable claim under the NHPA and Federal defendants' and Aquila's attempt to force a substantive decision now should be rejected.  The merits of whether Section 106 consultation was required in this case should be briefed on a substantive motion, rather than in the context of a Motion to Amend because the case law is unsettled.  Both Federal defendants and Aquila argue that the NHPA requirement for Section 106 consultation only applies to federally funded or licensed undertakings under *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752 (D.C. Cir. 2003), Fed. Opp. at 1-2, Aquila Opp. at 11, but in so doing they simply engaged on the substantive question which is not settled law  *See Runnion ex rel. Runnion*, 786 F.3d at 520 ("The liberal standard for amending under Rule 15(a)(2) is especially important in cases where law is uncertain").

12

First, their arguments fail to address the fundamental question of statutory interpretation regarding what is an "undertaking." The statutory definition of "undertaking" requiring consultation under the NHPA specifically includes "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including…(4) those subject to State or local regulation administered pursuant to a delegation or approval by a Federal agency." 54 U.S.C. § 300320 (formerly 16 U.S.C. § 470w).[7] Outright reliance on *Fowler* (and indeed the decision in *Fowler* itself) ignores a plain reading of the NHPA, which statutorily includes state delegated programs in the definition of an undertaking.

Second, unfettered reliance on *Fowler* also omits the effect of the 1992 NHPA amendments that expanded tribal involvement and tribal protections, which *Fowler* did not address. The 1992 NHPA statutory amendments extensively incorporated tribal involvement in historic preservation efforts by establishing tribes as consulting parties under the NHPA, establishing programs to help tribes protect historic properties, encourage coordination between tribes, federal agencies, and states in historic preservation planning, and provide an avenue to recognize tribal preservation programs. 54 U.S.C. § 302701 (formally 16 U.S.C. § 470a). Significantly, the NHPA amendments afford the right to Section 106 consultation to tribes "that attach[] religious and cultural significance to historic properties that may be affected by an undertaking," which applies "regardless of the location of the historic property." 36 C.F.R. § 800.2(c)(2)(ii). NHPA regulations acknowledge that even through delegated programs, the Federal agencies ultimately "remain responsible for their government-to-government relationships with Indian tribes." 36 C.F.R. § 800.2(c)(4). This issue, so important to the Tribe's claims here, was not addressed in *Fowler*.

---

[7] In 1992 the NHPA was amended to specifically include state delegated programs.

13

Third, while the D.C. Circuit has decided to disregard the plain language regarding delegated programs, its decision is not binding in this Circuit and no other Circuit court has addressed this issue. Further, the legal issues and questions presented in this case are not as clearly answered in *Fowler* as Federal defendants and Aquila would suggest. While Aquila additionally cites *Sheridan Kalorama Historical Ass'n v. Christopher*, 49 F.3d 750, 755 (D.C. Cir. 1995), it too is a D.C. Circuit decision distinguishable from both the facts in this case and the claim presented in *Fowler*. The ultimate conclusion in *Sheridan Kalorama* was that a failure to exercise veto power is not an undertaking requiring compliance with Section 106, a conclusion of little value to the analysis here. *Id*. at 757.[8]

The Tribe is prepared to argue on the merits to this Court how and why the D.C. Circuit's conclusion that Section 106 does not apply to permits issued pursuant to a federally delegated program is overstated. At a minimum, detailed argument and analysis of the language of this extremely important statute, its history, and how it applies in this case, as well how this issue affects the Tribe, is better suited for briefing on the merits, rather than in truncated argument of whether amending the Complaint to include the NHPA claim is futile. For the purposes of the Motion to Amend, the claim is not clearly insufficient nor frivolous on its face given the plain language of the statute, legislative history, and a complete examination of the caselaw. *Jackson Nat'l Life Ins. Co.*, 2 F. Supp. 2d at 1168 (finding that the amended complaint is not clearly insufficient nor frivolous on its face and that "[w]hile time may show that some or all of the

---

[8] Reliance on *Historic Green Springs v. EPA*, 742 F. Supp. 2d 837, 854 (W.D. Va. 2010) for the argument that the NHPA does not apply is misplaced. The court in *Historic Green Springs* focused on EPA's failure to object and concluded that a failure to object is not the same as "approval," which constrained whether or not the NHPA applied.

14

plaintiff's claims will not succeed…the court should make that decision based on a fully-briefed dispositive motion, not on a finding of futility").

CONCLUSION

The Tribe's Motion to Amend its Complaint is not futile. The two claims the Tribe included in its Motion are judicially reviewable under the APA. When the EPA withdrew its objections to MDEQ's Section 404 wetlands permit it committed final agency action. This final agency action is presumed to be judicially reviewable and the Federal defendants and Aquila have not met their burden to demonstrate that EPA's withdrawal of its objection is precluded from judicial review because it is committed to agency discretion by law. The Tribe's claim that Federal defendants failed to consult pursuant to Section 106 of the NHPA before EPA withdrew its objection and MDEQ issued its permit is not clearly insufficient or frivolous on its face. The Tribe's Motion to Amend should be granted pursuant to Fed. R. Civ. P. 15(a)(2).

****

15

Dated:  November 1, 2018    Respectfully submitted,

*s/ Stephanie K. Tsosie*
JANETTE K. BRIMMER (WSB #41271)
STEPHANIE K. TSOSIE (WSB #49840)
(*Admitted Pro Hac Vice*)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104-1711
Phone: (206)343-7340 | Fax: (206)343-1526
jbrimmer@earthjustice.org
stsosie@earthjustice.org

LINDZEY SPICE (WI #1056513)
Menominee Indian Tribe of Wisconsin
P.O. Box 910
W2908 Tribal Office Loop Road
Keshena, WI 54135
Phone: (715) 799-5194
lspice@mitw.org

*Attorneys for Plaintiff Menominee Indian Tribe of Wisconsin*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2018, I electronically filed the foregoing

*PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO AMEND COMPLAINT* with the Clerk of

the Court using the CM/ECF system, which will send notification of this filing to the attorneys of

record and all registered participants.

<i>s/ Stephanie K. Tsosie</i>

STEPHANIE K. TSOSIE (WSB #49840)