UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MENOMINEE INDIAN TRIBE OF WISCONSIN,

    Plaintiff,

v.                                                                                            Case No. 18-C-108

U.S. ENVIRONMENTAL PROTECTION AGENCY and
UNITED STATES ARMY CORPS OF ENGINEERS,

    Defendants,

and

AQUILA RESOURCES INC.,

    Intervenor-Defendant.

---

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO AMEND AND GRANTING DEFENDANTS' MOTIONS TO DISMISS

---

Plaintiff Menominee Indian Tribe of Wisconsin filed this action for declaratory and injunctive relief against the United States Environmental Protection Agency and the United States Army Corps of Engineers (Federal Defendants). The Tribe challenges the Federal Defendants' refusal to exercise jurisdiction over a permit submitted pursuant to Section 404 of the Clean Water Act (CWA), 33 U.S.C. § 1344, relating to Intervenor-Defendant Aquila Resources Inc.'s proposal to construct the Back Forty Mine in Menominee County, Michigan. Instead of the EPA, the Michigan Department of Environmental Quality (MDEQ) is overseeing the permitting process. In its initial complaint, the Tribe asserted two separate claims: First, the Tribe claimed that the Federal Defendants had a mandatory duty under the CWA to assume jurisdiction over the Section 404 permit process, which the Tribe could enforce pursuant to the CWA's citizen suit provision, 33 U.S.C. § 1365. Second,

the Tribe claimed that the Federal Defendants' refusal to assert jurisdiction over the permit process is arbitrary and capricious in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A).

The defendants filed motions to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. The court held oral argument on the motions on August 1, 2018, and the parties submitted supplemental briefing on the matter. On September 11, 2018, the Tribe filed a motion to amend the complaint, seeking to add two new claims. In its proposed amended complaint, the Tribe asserts, first, that the EPA's withdrawal of its objections to the permit was arbitrary and capricious and contrary to law under the APA and, second, that the EPA's failure to consult with the Menominee Tribe pursuant to the National Historic Preservation Act (NHPA), 54 U.S.C. § 300101, *et seq.*, before the permit for the mine was issued was also arbitrary and capricious and contrary to law under the APA. For the reasons explained below, the motion to amend will be denied, the motions to dismiss will be granted, and the case will be dismissed.

## BACKGROUND

**A. Statutory and regulatory background**

The Clean Water Act was enacted in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Although the Act generally prohibits the discharge of pollutants into navigable waters without a permit, 33 U.S.C. § 1311(a), the Secretary of the Army, acting through the Corps, may issue a Section 404 permit for the discharge of dredged or fill material into navigable waters. § 1344(a). The EPA retains oversight of the Section 404 permitting program and may veto the Corps' approval of a permit when the

dredged or fill material would have "an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas . . . , wildlife, or recreational areas." § 1344(c).

Under the Act, a state may request permission from the EPA to administer its own individual and general permit program for the discharge of dredged or fill material into "navigable waters . . . other than those waters which are presently used, or are susceptible to use in their natural condition or by reasonable improvement as a means to transport interstate or foreign commerce . . . including wetlands adjacent thereto." § 1344(g)(1). Once the EPA approves a state's Section 404 permit program, that state assumes jurisdiction over the permitting process and the federal program is suspended. § 1344(h). Even with its program suspended, the federal government acts as an overseer of the state's process by reviewing any action the state takes with respect to Section 404 permits. § 1344(j).

Pursuant to § 1344(j), the state must provide the EPA with a copy of every permit application it receives as well as a copy of the permit the state intends to issue. The EPA Administrator then provides copies of the application to the Corps and notifies the state within 30 days if it intends to comment on the state's handling of the application. The EPA must submit its comments to the state within 90 days. Once a state is notified that the EPA intends to comment on the application, it may not issue a permit until it has received the EPA's comments or the 90-day commenting period has passed. If the EPA objects to the application, the state "shall not issue such proposed permit" and may either issue a revised permit that resolves the EPA's objections, deny the permit application, or request a public hearing. *Id.* Permitting authority only transfers back to the Corps if the state does not take any action in response to the EPA's objection. *Id.* To date, only Michigan and New Jersey have been federally approved to administer Section 404 permit

procedures. The EPA approved Michigan's Section 404 permit program in 1984, after the Corps entered into a memorandum of agreement with the state of Michigan on April 3, 1984. *See* 49 Fed. Reg. 38,947 (Oct. 2, 1984); ECF No. 23-3.

**B. Allegations contained in the complaint**

The Menominee Indian Tribe of Wisconsin is a federally-recognized Indian tribe with ancestral territory spanning the state of Wisconsin as well as parts of Michigan and Illinois. Compl. ¶ 10, ECF No. 1. Although the present-day reservation is located on a tract of land in reserve along the Wolf River, the Tribe has lived and practiced cultural and religious ceremonies within reservation lands, ceded lands, and ancestral lands around the Menominee River. *Id.* ¶¶ 10–11.

Aquila Resources, Inc. applied to the MDEQ for a Section 404 permit to construct the Back Forty Mine on the banks of the Menominee River in Lake Township, Michigan. *Id.* ¶ 36. The MDEQ provided the EPA with a copy of the permit application in May 2016, and the EPA subsequently notified the MDEQ of its objections to the proposed permit. Aquila withdrew its application and reapplied for the Section 404 permit on January 17, 2017. *Id.* ¶¶ 42–43.

On August 18, 2017, Senator Tammy Baldwin of the state of Wisconsin wrote to the Corps, requesting "that the federal agencies take jurisdiction of the Section 404 permitting for the Mine." *Id.* ¶ 45. The Tribe later wrote to the Corps and the EPA on August 21, 2017, advising the Federal Defendants that they were the proper authorities over the Section 404 permit. It explained that the Menominee River is used in interstate commerce, and as a result, the "River and adjacent wetlands were not and could not be delegated to the State of Michigan in 1984 under 33 U.S.C. § 1344(g)" because the River is used in interstate commerce. *Id.* ¶¶ 35, 46.

4

The Corps answered Senator Baldwin's letter in August 2017 and the Tribe's in September 2017, expressing that it would not exercise jurisdiction over the Section 404 permit because Michigan assumed authority over the permitting process. It noted that the EPA would exercise its authority to review and potentially object to the proposed permit at a later date. *Id.* ¶ 47. On October 13, 2017, the EPA offered to consult with the Tribe regarding the Section 404 permit process. *Id.* ¶ 48. The Tribe notes that neither response addresses the Menominee River's status as an interstate water used for the transport of interstate commerce.

On March 8, 2018, the EPA issued a letter objecting to the MDEQ's revised proposal. ECF No. 35-3. In response, Aquila provided information to the EPA related to the objections. In a May 3, 2018 letter to the MDEQ, the EPA noted that the information provided by Aquila resolved a number of its objections and that a "pathway" existed "for the resolution of EPA's remaining objections through MDEQ's inclusion of specific conditions in a final permit issued by June 6, 2018." ECF No. 35-5. On June 4, 2018, the MDEQ issued a permit that the EPA believed satisfied its remaining objections.

**ANALYSIS**

**A. Motion to amend**

The court begins with the Menominee Tribe's motion for leave to amend the complaint. After the opportunity to amend the pleadings as a matter of course has passed, a party may amend a complaint only with the consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a). Generally, motions to amend pleadings are treated favorably under Rule 15's liberal amendment policy. *Id.* Leave to amend should be "freely given," absent considerations such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

5

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962).

The defendants oppose the motion to amend only on the ground that the proposed amendment to the complaint is futile. An amendment is futile if the amended pleading would not survive a motion to dismiss. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014). To survive a motion to dismiss, the amended complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 685 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Before denying a motion to amend, however, it should be "clear" that the proposed amended complaint "is deficient" and would not survive such a motion. *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008); *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend." (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004))). "The liberal standard for amending under Rule 15(a)(2) is especially important where the law is uncertain." *Runnion*, 786 F.3d at 520. "In the face of uncertainty, applying the liberal standard for amending pleadings, especially in the early stages of a lawsuit, is the best way to ensure that cases will be decided justly and on their merits." *Id.* (citing *Forman*, 371 U.S. at 181–82). The court will analyze each claim in turn.

**1. APA claim regarding the EPA's withdrawal of its objections to the proposed permit**

The Tribe asserts in the proposed amended complaint that the EPA's decision to withdraw its objections to the assumed Section 404 permit was arbitrary, capricious, and contrary to law under the APA. The APA authorizes suit by "a person suffering legal wrong because of agency action, or

adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. The APA allows a district court to "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 706(2)(A). The APA precludes judicial review of agency actions that are "committed to agency discretion by law." § 701(a)(2). The "committed to agency discretion" exception applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply," or when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quotation marks and citations omitted); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

The Tribe asserts that the EPA's ultimate conduct in withdrawing its objections is judicially reviewable final agency action that is not committed to agency discretion by law. It maintains that once the EPA objected and inserted itself into the permitting process, its decision to withdraw the objections cannot be arbitrary and capricious or contrary to law. The defendants contend that the EPA's decision to withdraw its objections is not reviewable because it was an action committed to the EPA's discretion.

At issue in this case, then, is whether the EPA's decision to withdraw its objections to a Section 404 permit proposal is an action committed to the EPA's discretion and thus unreviewable by this court. The Seventh Circuit touched on this issue, albeit in the context of a different permitting program, in *American Paper Institute, Inc. v. United States Environmental Protection Agency*, 890 F.2d 869 (7th Cir. 1989). There, the EPA authorized the Wisconsin Department of Natural Resources (WDNR) to issue permits to point sources, or pollutant dischargers, in Wisconsin under the National Pollutant Discharge Elimination System (NPDES), 33 U.S.C. § 1251, *et seq.* The

7

WDNR proposed to issue thirteen permits to paper and pulp mills in Wisconsin. The EPA notified the WDNR that it objected to all of the permits proposed, allowed comments on the objections, and provided a public hearing on the objections. The EPA later modified some of its objections but reaffirmed its remaining objections to eleven permits. The WDNR subsequently modified the permits. American Paper Institute and four paper and pulp mill owners challenged the EPA's authority to object to the NPDES permits proposed by the WDNR. *Am. Paper*, 890 F.2d at 872.

The Seventh Circuit held that it lacked subject matter jurisdiction to hear the appeal and dismissed the petition. *Id.* at 878. The court noted that, while "EPA objections could arguably be challenged in district court under the Administrative Procedure Act," such review is unavailable because the CWA precludes federal review of state-issued permits and an EPA objection is an agency action committed to agency discretion. *Id.* at 875. The court recognized that the CWA "reflects 'the desire of Congress to put the regulatory burden on the states and to give the [EPA] broad discretion in administering the program.'" *Id.* (alterations in original) (quoting *District of Columbia v. Schramm*, 631 F.2d 854, 860 (D.C. Cir. 1980)). Because the CWA "demonstrates an intent for the EPA and the states to work through differences in permitting decisions, and the EPA needs a range of discretion to accomplish this goal," the court concluded "federal courts should leave EPA with its discretion to review state-issued permits." *Id.*

In this case, much like the NPDES permitting program, the state permitting process under Section 404 gives state officials primary responsibility to review and approve permits and allows the EPA to exercise broad discretion in overseeing the program, which includes the decision of whether to object to the permit and withdraw those objections once it determines the objections have been resolved. Indeed, Section 404 and the EPA's corresponding regulations do not contain language

requiring that the EPA object to or comment on a proposed permit. Although the regulations indicate that permit objections "shall be based on the Administrator's determination that the proposed permit is (1) the subject of an interstate dispute under § 233.31(a) and/or (2) outside requirements of the Act, these regulations, or the 404(b)(1) Guidelines," 40 C.F.R. § 233.50(e), the initial decision to object remains within the Administrator's discretion. And once the EPA objects, there is nothing in the CWA or the regulations specifying that the Administrator is stripped of the discretion to decide whether to later withdraw those objections. In short, the EPA's discretionary decision to object and subsequently withdraw those objections is not reviewable under the APA, as the statute is drawn in such broad terms that there is no clear law to apply and there is no meaningful standard against which to judge the agency's exercise of discretion. The Tribe therefore fails to state a claim upon which relief can be granted, and any amendment to the complaint to add such a claim would be futile.

**2. APA claim regarding the Federal Defendants' violation of the NHPA**

The Tribe's proposed amended complaint asserts a second claim under the APA, alleging that the Federal Defendants violated § 106 of the NHPA when they failed to consult with the Tribe. The APA permits courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). A claim under § 706(1) can only proceed, however, "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The court finds that the Federal Defendants were not required to consult with the Tribe about the Back Forty Mine Project because § 106 only applies when a project is federally funded or federally licensed.

The NHPA comprises "a series of measures designed to encourage preservation of sites and structures of historic, architectural, or cultural significance." *Penn Cent. Transp. Co. v. City of New*

9

*York*, 438 U.S. 104, 108 n.1 (1978). It "requires each federal agency to take responsibility for the impact that its activities may have upon historic resources, and establishes the Advisory Council on Historic Preservation . . . to administer the Act." *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752, 755 (D.C. Cir. 2003). Section 106 states:

> The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, shall take into account the effect of the undertaking on any historic property. The head of the Federal agency shall afford the Council a reasonable opportunity to comment with regard to the undertaking.

54 U.S.C. § 306108.

The Tribe asserts that the Back Forty Mine Project is an undertaking, noting that the NHPA's definition of "undertaking" includes "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including . . . those subject to State or local regulation administered pursuant to a delegation or approval of a Federal agency." 54 U.S.C. § 300320(4). Even if the Back Forty Mine Project is an "undertaking" as defined by § 300320, Section 106 applies only to (1) "any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking" and (2) "any Federal department or independent agency having authority to license any undertaking." § 306108. Stated differently, unless a project is federally funded or federally licensed, § 106 does not apply. *See Fowler*, 324 F.3d at 760 (Section 106 "applies by its terms only to *federally funded* or *federally licensed* undertakings . . . and not to undertakings that are merely subject to State or local regulation administered pursuant to a delegation or approval by a Federal agency." (internal quotation marks and citations omitted)).

10

The Tribe has not alleged that the Back Forty Mine Project is federally funded or licensed. To the contrary, the record reflects that the project was proposed by and will be funded by Aquila and its investors and the state of Michigan has jurisdiction over the Section 404 permitting process. Because the Back Forty Mine Project is neither federally funded nor federally licensed, the project has not met the requirements of § 306108. As a result, the court need not decide whether the project satisfies § 300320's definition of "undertaking." *See Sheridan Kalorama Historical Ass'n v. Christopher*, 49 F.3d 750, 756 (D.C. Cir. 1995) ("[H]owever broadly the Congress or the ACHP define 'undertaking,'" the text of § 106 "still applies by its terms only to *federally funded* or *federally licensed* undertakings."). The Federal Defendants were therefore not required to initiate consultation with the Tribe pursuant to § 106. The Tribe has failed to state a claim upon which relief can be granted as to its NHPA contention, and any amendment to the complaint to add such a claim would be futile. Accordingly, the motion to amend is denied.

**B. Motions to dismiss**

In its original complaint, the Menominee Tribe asserts that the Federal Defendants failed to assume jurisdiction over the Section 404 permit pursuant to the CWA's citizen suit provision and that the Federal Defendants violated the APA when they refused to assert jurisdiction over the permit process. The defendants have moved to dismiss the complaint pursuant to Rule 21(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of this court of the subject matter related in the complaint. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *Schaefer v. Transp. Media, Inc.*, 859 F.2d 1251, 1253 (7th Cir. 1988). If material factual allegations are contested, the proponent of

11

federal jurisdiction must "prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sedowski*, 441 F.3d 536, 543 (7th Cir. 2006). When the moving party "launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks and citations omitted).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that a complaint must contain factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he or she must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* In evaluating a motion to dismiss, the court must view the plaintiff's factual allegations and any inferences reasonably drawn from them in a light most favorable to the plaintiff. *Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004).

Under the incorporation-by-reference doctrine, a court may consider documents attached to a Rule 12(b)(6) motion if "they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). In other words, the parties may submit documents mentioned in the plaintiff's complaint without converting the motion to dismiss into a motion for summary judgment. The doctrine "prevents a plaintiff from

12

'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *Id.* (alterations in original) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). With these standards in mind, the court turns to the motions to dismiss.

### 1. CWA claim

The Menominee Tribe challenges the Federal Defendants' failure to assume jurisdiction over the Section 404 permit pursuant to the CWA's citizen suit provision, 33 U.S.C. § 1365. Section 1365 allows any citizen to "commence a civil action on his own behalf . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." § 1365(a)(2). The CWA defines "Administrator" as the Administrator of the EPA. § 1251(d) ("Except as otherwise expressly provided in this chapter, the Administrator of the Environmental Protection Agency (hereinafter in this chapter called 'Administrator') shall administer this chapter."). Because the CWA's definition of "Administrator" includes only the Administrator of the EPA and not the Corps or its officials, the Federal Defendants contend § 1365 does not unequivocally authorize citizen suits against the Corps, and therefore the Tribe may not maintain its CWA claim against it.

Citing *National Wildlife Federation v. Hanson*, 859 F.2d 313 (4th Cir. 1988), the Menominee Tribe asserts that the waiver of sovereign immunity must include the Corps to effectuate Congress' intent. In *Hanson*, a number of environmental groups filed an action under the CWA's citizen suit provision, asserting the Corps failed to make a proper wetlands determination. The government asserted the plaintiffs could not maintain a citizen suit against it under § 1365(a)(2). The Fourth Circuit held that the EPA and the Corps are proper defendants in CWA citizen suits alleging violations of the Section 404 permitting process, reasoning that "Congress could not have

13

intended to" consent to a suit against the EPA but not against the Corps when both entities are responsible for issuing permits under the CWA and enforcing their terms. *Id.* at 315–16. It concluded that § 1365(a)(2) should be interpreted in conjunction with "Civil Procedure Rule 20 (joinder) to allow citizens to sue the Administrator and join the Corps when the Corps abdicates its responsibility . . . and the Administrator fails to exercise the duty of oversight imposed by section 1344(c)." *Id.* at 316.

While the Seventh Circuit has not yet addressed this issue, a number of courts have rejected the holding in *Hanson* and concluded the express terms of § 1365 do not waive the Corps' sovereign immunity. For instance, in *Preserve Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Engineers*, the plaintiff brought a citizen suit against the Corps and others, challenging a proposed highway construction project in Cobb County, Georgia. 87 F.3d 1242 (11th Cir. 1996). The Eleventh Circuit found that the district court properly dismissed the plaintiff's claim against the Corps for lack of jurisdiction. The court observed that the CWA's citizen suit provision clearly and unambiguously waives sovereign immunity with respect to the Administrator, but not the Corps. As a result, the court concluded Congress did not intend to waive sovereign immunity in regard to CWA citizen suits against the Corps. *Id.* at 1249.

Similarly, the district court in *Cascade Conservation League v. M.A. Segale, Inc.*, 921 F. Supp. 692 (W.D. Wash. 1996), concluded that § 1365(a)(2) does not waive the Corps' sovereign immunity. It recognized that "construction of a waiver of sovereign immunity begins and ends with the express terms of the statute. The Court must rely on plain meaning interpretation to the extent possible, and must resolve any ambiguities against a finding of waiver." *Id.* at 697. Under this principle, the court found that the waiver of sovereign immunity was limited to the Administrator

14

under the clear terms of the statute, and it was "not at liberty to rewrite the statute in accordance with extrinsic delegations of duty." *Id.* at 696. The court therefore concluded that it could not entertain a CWA citizen suit against the Corps. *Id.*; *see also Walther v. United States*, No. 3:15-cv-0021-HRH, 2015 WL 9700347, at *6 (D. Alaska July 27, 2015) ("Section 505(a)(2) only waives sovereign immunity as to the suits against the Administrator. . . . Because Section 505(a)(2) does not waive immunity for suits against the Corps, the court lacks subject matter jurisdiction over plaintiff's CWA claim."); *All. to Save Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 6 (D.D.C. 2007) ("*Hanson* is contrary to a series of other cases. . . . However puzzled the court [in *Hanson*] may have been by the statute, and even if the court were correct that 'Congress cannot have intended to' waive sovereign immunity as to EPA but not as to the Corps, Congress's presumed intent is not the question when a court interprets a sovereign immunity waiver.").

I find the reasoning of these cases and the weight of this authority persuasive. "The United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). A waiver of sovereign immunity must be clear and unambiguous. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992))). A court must narrowly construe a statute waiving sovereign immunity. *See Sossamon v. Texas*, 563 U.S. 277, 292 n.10 (2011); *United States Dep't of Energy v. Ohio*, 503 U.S. 607, 614 (1992). Section 1365(a)(2) only contemplates the waiver of sovereign immunity as to suits against the Administrator of the EPA—it does not clearly and unambiguously waive immunity for suits against the Corps. Because "a waiver of the Government's

sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign," *Lane*, 518 U.S. at 192, the court declines to presume that Congress intended something beyond what the statute states. *See Cascade*, 921 F. Supp. at 697 ("[C]ourts must assume that a legislature says in a statute what it means and means in a statute what it says there." (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992))). There is no need to imply a cause of action here because relief is available to the Tribe under the APA. *See Scott v. City of Hammond, Indiana*, 741 F.2d 992 (7th Cir. 1984). The court therefore finds that it lacks subject matter jurisdiction over the Menominee Tribe's CWA claim against the Corps.

Even if the court had jurisdiction over the Corps, the Tribe's CWA claim must be dismissed in its entirety because the Tribe failed to identify a nondiscretionary duty that the Federal Defendants have not performed as required by § 1365. *See* 33 U.S.C. § 1365(a)(2) ("[A]ny citizen to commence a civil action on his own behalf . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."). The Federal Defendants assert that the CWA does not create a mandatory duty for either the Corps or the EPA to administer the Section 404 permitting program. As an initial matter, the statute makes clear that the EPA does not have a mandatory duty to assume a permit-writing function under the CWA. Indeed, it is the Secretary of the Corps, not the Administrator of the EPA, that may issue permits "for the discharge of dredged or fill material into the navigable waters at specified disposal sites." § 1344(a). In this case, the Tribe challenges the Corps' decision to decline oversight of the permit process for the Back Forty Mine because, in the Corps' view, it did not have the jurisdiction to do so. Even if the Corps is mistaken, a citizen suit "cannot be employed to challenge the substance or content of an agency action." *Scott*, 741 F.2d at 996

(citation omitted). Thus, any disagreement the Tribe may have with the EPA's decision to allow Michigan to assume authority of the Section 404 permitting process would have to be challenged under the APA, not via citizen suit. In sum, the Menominee Tribe has failed to state a claim under the citizen suit provision of the CWA.

**2. APA claim as to the decision declining to take primary jurisdiction over the permit**

The Menominee Tribe also seeks to assert an as-applied challenge under the APA. An as-applied challenge "'must rest on final agency action under the APA,' taken within six years of the filing of the complaint." *Nat'l Wildlife Fed'n v. EPA*, 945 F. Supp. 2d 39, 43 (D.D.C. 2013) (quoting *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997)); *see also* 5 U.S.C. § 704 (The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court."). To be "final" and subject to review under the APA, an agency action must generally satisfy two conditions:

> First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted)).

The Tribe asserts that it may challenge the Federal Defendants' decision declining to take primary jurisdiction over the Mine's Section 404 permit under the APA because the Federal Defendants' letters to the Tribe constitute final agency action. On August 21, 2017, the Tribe wrote a letter to the Corps and the EPA, requesting that the Federal Defendants make a specific formal determination regarding the jurisdictional status of the wetlands at issue in the permit. It explained

17

that "a thorough review of the current status of interstate commerce on the Menominee River adjacent to the wetlands at issue, as well as a study of its susceptibility for future use in interstate commerce, will lead to the conclusion that the CWA does not allow for Michigan's assumption of jurisdiction pursuant to § 404(g)(1)." ECF No. 21-7 at 7. The Corps responded to the Tribe's letter on September 28, 2017, expressing that, because Michigan assumed jurisdiction over the Section 404 permitting program, the Corps does not have the authority to initiate tribal consultation regarding Aquila's permit application as "the conditions required for the Corps to review the application have not yet occurred." ECF No. 21-8. The Corps observed that the EPA retains oversight over all Section 404 permits:

> [T]he EPA has authority to object to a project that does not conform to Section 404 and in particular, the 404(b)(1) Guidelines. If the objection is not resolved, and MDEQ does not deny the permit, Section 404 authority transfers to the Corps.

*Id.* The EPA responded to the Tribe's letter on October 13, 2017, offering to consult with the Tribe regarding the permit process for the proposed Back Forty Mine. ECF No. 21-9.

Although courts have found certain letters constitute final agency action, "agency action that merely reiterates or affirms an earlier agency decision and does not affect the rights or alter the status quo of the complaining party is not considered a 'final agency action.'" *Harris v. FAA*, 215 F. Supp. 2d 209, 213 (D.D.C. 2002). In this case, the Federal Defendants' responses were purely informational in nature and did not make any factual or legal determinations about the waters at issue or about jurisdiction. The letters did nothing more than reiterate that the EPA approved Michigan's permitting program in 1984 and that the Federal Defendants would not exercise jurisdiction over the permit as a result. In other words, the Tribe was left with the remedies available to it under Michigan law.

18

In essence, the Tribe seeks to challenge the underlying EPA decision made in 1984 that allowed Michigan to assume permitting authority over Section 404 permits related to the Menominee River. The 1984 decision is the final agency action, not the letters that merely reaffirm that decision. The Federal Defendants' letters "tread no new ground. [They] left the world just as [they] found it, and thus cannot be fairly described as implementing, interpreting, or prescribing new law or policy." *Clayton Cty., Georgia v. FAA*, 887 F.3d 1262, 1267 (11th Cir. 2018) (quoting *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 422–25 (D.C. Cir. 2004)); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 449–51 (D.C. Cir. 2004) (holding that a letter from an agency that reflected "neither a new interpretation nor a new policy" did not "impose new obligations"). In short, the Federal Defendants' responses do not constitute "final agency action" and are not reviewable by this court. *See Indep. Equip. Dealers Ass'n*, 372 F.3d at 428 (finding that EPA letter was not reviewable agency action when it restated "for the umteenth time" its longstanding interpretation of certain regulations). The Tribe has therefore failed to state a claim rasing an as-applied challenge under the APA.

## CONCLUSION

For these reasons, the Menominee Tribe's motion to amend (ECF No. 34) is **DENIED**, the Federal Defendants and Aquila's motions to dismiss (ECF Nos. 6, 19) are **GRANTED**, and the case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   19th   day of December, 2018.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court
